TWEEDIE TRADING CO. v. PITCH PINE LUMBER CO.

(District Court, S. D. New York. April 26, 1906.)

SHIPPING—DEMURRAGE—LIABILITY OF SHIPPER UNDER CONTRACT.

Where a bill of lading expressly gave the shipowner the right to hold the shipper for any charge under the contract, the fact that such owner did not enforce its right, also given thereby, to collect demurrage for detention in discharging from the consignee, or by enforcing its lien on the cargo at the port of discharge, did not estop it from collecting such demurrage from the shipper, especially where the shipper consigned the cargo to itself, and, although it indorsed the bill of lading to another, remained the owner until actual delivery.

[Ed. Note.—Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

In Admiralty. Suit for demurrage.

Wheeler, Cortis & Haight, for libellant.

Wing, Putnam & Burlingham, for respondent.

ADAMS, District Judge. This action was brought by the Tweedie Trading Company, the chartered owner of the steamship Sangstad, to recover from the Pitch Pine Lumber Company 12 days' demurrage of the said steamer, said to be due by reason of her detention in unloading at Buenos Aires, Argentina, in September, 1905. A contract was made between the parties for the transportation of the lumber in a letter, of which the following is a copy:

"New York, June 26th, 1905.

The Pitch Pine Lumber Co., City.

Dear Sirs: We beg to confirm freight booking with you, under deck, on one of our steamers, for shipment of 1,600,000 superficial feet, say two (2) lots of 800 M. feet each, white pine lumber from Portland, Me., to Buenos Ayres, Argentine, part cargo via port or ports, steamers option, shipment subject to all terms and conditions of B/L as per copy attached; freight Nine Dollars ($9.00) per thousand superficial feet intake measure and intaken survey, prepaid at New York, July or August shipment, steamers option, your option of cancelling this contract if steamer does not report for cargo by 6 p. m. August 10th. Cargo to be received and delivered within reach of steamers tackles at ports of loading and discharging, as fast as vessel can receive and deliver, and at such berths where steamer can always safely lie afloat. We to give shippers fifteen (15) days notice of a steamer's expected readiness to load. Steamer to load at such wharf as designated by shippers and to discharge at such wharf as designated by consignee.

Yours very truly,

The Tweedie Trading Co.,
(Sgd) by M. Stanley Tweedie, President.

The Tweedie Trading Co.,
(Sgd) A. V. Moore, Jr., Secretary.

We hereby accept the above contract.

The Pitch Pine Lumber Co.,
(Sgd) by G. R. Crossley, Vice Pres. & Treasurer."

The form of bill of lading referred to contained the following clauses:

"(7) Also, that the carrier shall have a lien on the goods for all freights, primages and charges; and also for all charges, expenses, fines, liability or damages which carrier, ship or cargo may incur or suffer by reason of any

illegal, incorrect or insufficient marking, numbering or addressing of packages, or description of contents, or for any illegal or improper act of shipper, owner or consignee, and also for all other sums for which shipper, owner or consignee may be liable hereunder to carrier; and that such lien shall continue after delivery of the goods until paid; and the shipper shall also be liable therefor.

(8) Also, Steamer to commence loading immediately upon arrival at the port of loading, and to load continuously, working all hatches at once, any custom of the port to the contrary notwithstanding. Any detention on the part of the shippers in supplying cargo as fast as steamer can receive to be accounted for by the payment of demurrage by them at the rate of eight pence British Sterling per Steamer's net register ton, and Steamer to have a lien on cargo for same, unless contrary agreement outside of this Bill of Lading.

(9) Also, that the ship may commence discharging immediately upon arrival and discharge continuously any custom of the port to the contrary notwithstanding, the Collector of the Port being hereby authorized to grant a general order for discharge immediately upon arrival, the goods to be taken from the ship's tackle, where the carrier's responsibility shall cease by the consignee without notice immediately the vessel is ready to discharge, package by package as they come to hand in discharging the ship; and if the goods be not so taken from the ship all responsibility of ship or carrier therefor, either as carrier, bailee or otherwise, shall be thereupon ended and the agent or master of the ship shall have liberty, for account of, and as the servants of shipper, owner and consignee, all and any of them, and at their sole risk, charge and expense, to hire lighters and craft for the landing of the goods, to enter and land the same, to put them in hulk, craft or store, or deposit them in or upon wharf, ware house, public stores or Custom House, or permit them to lie where landed, according to the best judgment of said agent or master which shall be final and conclusive upon all persons interested without previous notice to shipper, owner or consignee, and thereupon the goods shall be deemed to be fully delivered, the carrier retaining a lien thereon until payment for all costs, charges and expenses incurred and also as hereinbefore provided, and the goods to be subject to storage, wharfage and other charges. If the steamer discharge at wharf consignees to receive cargo there, as above provided, and any detention on the part of the consignees or owners of the cargo in receiving cargo as fast as Steamer can deliver in lighter, if the Steamer discharges in lighters, or in receiving cargo at wharf, if Steamer discharges at a wharf, Steamer working all hatches at once, in both instances, to be accounted for by the payment of demurrage by them at the rate of eight pence British Sterling per Steamer's net register ton, and Steamer to have a lien of cargo for same, unless contrary written agreement outside of this Bill of Lading."

The steamer was loaded with about 1,600,000 feet of yellow pine and spruce lumber at Portland and, when using all of her 5 hatches, at the rate of about 400,000 feet per day. Other lumber besides that in question was taken aboard. She was loaded for three ports, Rosario, Campana and Buenos Aires. She was duly loaded and sailed on the 5th of August, and arrived at the last place on Sunday the 3rd of September and entered at the Custom House on Monday the 4th of September at 10 o'clock. That afternoon orders were received to go to unloading berth, but on reaching there the next day about 8 o'clock A. M., she found the wharf occupied by another vessel, the steamer Cape Nor, and was obliged to lie outside of her. The Cape Nor was also some distance, about 20 feet, from the wharf, on account of shallow water. Discharging was then commenced to the shore over the other steamer and into lighters outside and continued until the 13th of September, when the Sangstad was shifted to another berth, where the discharging was finished on the 19th. At the

first discharging place there was delay owing to the discharging men being obliged to work over the other steamer, and there was some delay at the second place because of deficiency of discharging men. Altogether there was considerable detention, for which the demurrage is claimed.

The answer alleges that if there was any detention the respondent is not responsible for it under the provisions of the contract and that the libellant lost any right it had in such respect by failing to enforce it in Buenos Aires.

The correspondence shows and the president of the libellant substantially admits that while urging its correspondents to collect the demurrage, it did not seek to enforce its legal rights there because it did not wish to encounter the delays and expenses of litigation in that place, and relies upon its rights against the respondent under the contract.

It is urged by the respondent (1) that paragraph 7 of the bill of lading precludes a recovery because it specifically provides that consignees or owners shall be liable for detention at port of discharge and gives the ship a lien for any demurrage and (2) that the libellant having made no bona fide effort to collect at Buenos Aires is therefore estopped from proceeding against the shippers.

I do not consider that these positions are sound. There was no act or omission on the part of the libellant which would form the basis of an estoppel and the controversy is determinable upon the terms of the contract of shipment. They gave the libellant three recourses in collecting demurrage, one against the shipper, another against the consignee and the third against the lumber. The libellant relinquished the last two, relying, rightfully I think, upon the first.

The letter of June 5th, contained a clause that the cargo was to be delivered as well as received "as fast as vessel can receive and deliver" and clause 7 of the bill of lading conferred upon the libellant the right to hold the shipper for any charge under the contract. It now appears that the shipper did not continue to be the owner of the cargo to the end, that is, in securing advances on the bill of lading, it conveyed away the title to the lumber before the time of shipment but even if such act affected the libellant, it was not notified of the transfer then, or at any time in which it could take steps to protect itself.

It is contended that under clause 9 of the bill of lading only the owner or consignee of the cargo became liable for demurrage. If that were so, the respondent is apparently still responsible herein, as it addressed the lumber to itself at the port of discharge and the person to whom it subsequently ordered the lumber to be delivered was the endorsee of the bill of lading, but it remained the consignee until the actual delivery.

Clause 7 provides "that the carrier shall have a lien on the goods for all freights  *  *  * and also for all other sums for which the shipper, owner or consignee may be liable hereunder to carrier  *  *  * and the shipper shall also be liable therefor." The

cesser clause being eliminated, as it was here, and a stipulation having been made for the liability of the shipper, it does not seem that any defence is presented by the contention that the clause only covers claims, of a like character to those enumerated, because demurrage is included "as being an extended freight or reward to the vessel in compensation of the earnings she is improperly caused to lose." It was said in Neilsen v. Jesup (D. C.) 30 Fed. 138, 139, using the above quotation: "In this view the consignee who is liable for freight would be equally liable for demurrage."

Decree for the libellant, with an order of reference.