TWEEDIE TRADING CO. v. BARRY et al.

(District Court S. D. New York.  January 19, 1912.)

1. SHIPPING (§ 181*)—DEMURRAGE—LAY DAYS FOR DISCHARGING.
    Where a contract of carriage requires the vessel to discharge her cargo at a specified wharf, lay days for discharging do not commence to run until she obtains a berth at such wharf.
    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 589–592; Dec. Dig. § 181.*]

2. SHIPPING (§ 184*)—ACTION FOR DEMURRAGE—SUFFICIENCY OF EVIDENCE.
    In a suit for demurrage for delay by a cargo owner in discharging, where the contract fixed no time for discharging, proof by libelant that the actual time taken exceeded a reasonable time casts on the respondent the burden of showing a legal excuse therefor to avoid liability.
    [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 184.*]

3. SHIPPING (§ 173*)—DEMURRAGE—LIABILITY OF SHIPPER—CONSTRUCTION OF BILL OF LADING.
    Where a bill of lading for a cargo requires its delivery "to order," the legal effect is to make the consignor the consignee, and the title remains in the shipper until the bill of lading is indorsed over; and where such a bill made the consignee liable for demurrage at the port of discharge, and further provided that the shipper should be liable for all sums for which the owner or consignee was liable, the failure of the shipowner to collect demurrage from the indorsee did not release the shipper from liability.
    [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 570; Dec. Dig. § 173.*
    Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

In Admiralty.  Suit by the Tweedie Trading Company against Charles D. Barry and others.  Decree for libelant.

Ralph James M. Bullowa, for libelant.
Burlingham, Montgomery & Beecher, for respondents.

HOLT, District Judge. This action is brought to recover demurrage for the detention of the steamer Sangstad at the port of Rosario, in the River Plate, in September, 1905. The libelant made a contract with the respondents to carry 850,000 feet of lumber from Portland, Me., to the ports of Rosario and Campana, on the River Plate, of which approximately 640,000 feet was to be delivered at the Central Argentine Railroad Company's wharf at Rosario. The lumber was loaded at Portland, and a bill of lading issued by the libelant, which provided that the lumber should be delivered at Rosario, at the Argentine Railroad Company's wharf, "to order"; any detention in discharging to be accounted for by the payment of demurrage by the consignees at the rate of 8 pence British sterling per steamer's net register ton per day. The steamer arrived at Rosario on September 24, 1905, but was not moored to the railroad company's wharf until September 26th. She began discharging on the 26th of September, and finished the discharge on October 5th.

[1] The libelant claims to recover for detention in the port of Rosario from September 24th until September 26th, before she got a berth; but, in my opinion, as the contract and bill of lading specified that the delivery was to be made at the Central Argentine Railroad Company's wharf, the lay days did not begin to run until the steamer arrived at the wharf on the 26th. Carver on Carriage by Sea (5th Ed.) § 623, and cases cited. The bill of lading did not fix any specific time for the discharge. The evidence satisfies me that three days was a reasonable time for the discharge of this cargo at Rosario. Ten days were occupied, from September 26th to October 5th. There is no clear evidence what the reason for the delay was.

[2] The respondents assert that the libelant was bound to prove affirmatively that there was no justification for the delay; but, in my opinion, the libelant having proved that the actual time of discharging the cargo exceeded a reasonable time for such discharge, the party liable is bound to establish an excuse for not discharging in season. Carver on Carriage by Sea, § 614, p. 797.

The respondents also claim that, being the shippers, they are not responsible for demurrage at the port of discharge. The libelant presented a claim for demurrage to the Central Argentine Railroad Company at Rosario shortly after the discharge of the cargo began, and made no claim against the respondents, the shippers of the lumber, for some time after. Such a fact undoubtedly suggests that the libelant originally looked first to the persons who took the lumber; but it is not decisive on the legal rights of the parties.

[3] The bill of lading provides that the lumber shall be delivered "to order." The legal effect of such a bill of lading is to make the consignors the consignees. The legal title to the property remains in the consignors until the bill of lading is indorsed over to the parties at the port of discharge to whom the goods are sent, and the ninth paragraph of the bill of lading makes the consignees liable for demurrage. The seventh section of the bill also provides that the shipper shall be liable for all sums for which the owner or consignee

may be liable. I think that under this bill of lading the respondents are liable for demurrage. Tweedie Trading Co. v. Pitch Pine Lumber Co. (C. C.) 146 Fed. 612.

The bill of lading provides that the rate of demurrage shall be eight pence British sterling per steamer's net register ton per day; but the contract contains a provision, and the bill of lading contains an indorsement, to the effect that, in consideration of the libelant's customary form of bill of lading being used, "the shippers are not responsible for any clauses contained therein which are not contained in the regular River Plate Syndicate form of bill of lading; the shippers binding themselves only to the aforesaid syndicate form of bill of lading." The evidence shows that there were then four lines of steamers running to the River Plate, which had entered into some kind of a combination and were commonly called the "River Plate Syndicate." But there never was any regular River Plate Syndicate form of bill of lading; each steamship company using its own form of bill of lading.

These forms differed in various respects, and among other respects in regard to the rate of demurrage charged. One of them fixes the rate at four pence; the others state no rate. Under these circumstances it would be difficult to decide what the agreement was about the rate of demurrage; but I understand that the counsel for the libelant consents that it should be fixed at four pence per ton, instead of eight pence, at which rate the demurrage would be $155.40 per day. There were ten days occupied in the discharge, from September 26th to October 5th. From these ten days should be deducted three days as a reasonable time for discharge, leaving seven days for which demurrage might be charged.

My conclusion, therefore, is that the libelant is entitled to judgment for $1,087.80, with interest and costs.