WILLIAM B. DAYTON, Respondent, v. WILLIAM A. PARKE
et al., Appellants.

Where hearsay evidence only is given of a fact at issue in an action, it
will not be regarded as sufficient proof of the fact unless it appears from
the course of the trial that it was so received and accepted.

The Supreme Court has no power on appeal to add to a judgment a sum
which it finds by the evidence to be due plaintiff, where the question as
to what amount is due is one of fact, upon which either party might
demand the verdict of a jury.

While a consignee, by simply accepting the goods consigned to him, and
in the absence of any provision in the bill of lading providing for the
payment of demurrage by him, is not liable therefor, where he is owner
of the cargo, and the vessel is through his fault detained an unreason-
able length of time at the port of discharge, he is liable for damages in
the nature of demurrage.

In such case, however, not only must an unreasonable detention be proved,
but, also, the damages, their nature and amount. Damages will not be
presumed simply from proof of unlawful detention, and so, if plaintiff
fail to prove any damages he is not entitled to judgment for even
nominal damages.

M. & Co. chartered plaintiff's schooner for a voyage from Charleston to
New York. The charter party contained specific provisions for the
payment of freight at a rate specified, and for the payment of a sum
specified for each day's unlawful detention. The cargo was consigned
to defendants, who were the owners thereof. The bill of lading pro-
vided for the delivery of the cargo to the consignees, "they paying
freight  *  *  *  as per said charter party and its conditions." Noth-
ing was contained therein upon the subject of demurrage. In an action
to recover freight and demurrage, *held*, that the reference in the bill
of lading to the charter party was confined to the conditions of the latter
instrument as to the payment of freight, and so, that the provisions of
the charter party as to demurrage were not made part of the bill of
lading, and defendants by receiving the cargo did not become liable to
pay the rate specified, but the amount of damages sustained by the
alleged unlawful detention was to be proved; and that in the absence of
proof plaintiff was not entitled to recover nominal damages.

*Wegener* v. *Smith* (80 Eng. C. L. R. 285); *Moller* v *Young* (24 L. J. 217);
*Porteous* v. *Watney* (47 id. 643), distinguished.

Reported below, 67 Hun, 137.

(Argued May 2, 1894; decided June 5. 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 25, 1893, which modified, and affirmed as modified, a judgment in favor of plaintiff entered upon a verdict directed by the court, and also appeal from so much of said order as affirmed an order of Special Term denying a motion for a new trial, and an order denying a motion for a re-taxation of costs.

This action was brought by plaintiff on behalf of himself and all the owners of the schooner *J. H. Parker*, to recover the freight on a cargo of railroad ties shipped by Mallonee & Co., of Charleston, S. C., the charterers of the schooner, and consigned to the defendants, and to recover demurrage at the rate stated in the charter party. Said charter party provided " that the lay days for loading and discharging shall be as follows: Commencing from the time the captain reports his vessel ready to receive or discharge cargo : For loading, cargo to be furnished at the rate of 40 M. ft. per day (Sundays excepted), and for discharging, customary dispatch. And for each and every day's detention by default of said party of the second part, or agent, fifty-two dollars shall be paid by said party of the second part, or agent, to said party of the first part, or agent."

The further facts, so far as material, are stated in the opinion.

*Thomas J. Ritch, Jr.,* for the respondents. Where hearsay testimony is admitted without objection it is proper for the jury to consider it as a part of the evidence in the case. (*F. Bank* v. *Cowan,* 2 Abb. Ct. App. Dec. 88; *Ganson* v. *Tifft,* 71 N. Y. 48; *Coolrick* v. *Swinburne,* 105 id. 503 ; *Denise* v. *Denise,* 110 id. 562; *Crane* v. *Powell,* 139 id. 379.) This is merely the case of an intermediate consignee (47 N. Y. 619, 620 ; 9 Hun, 378, 380) who was not a party to either the charter party or the bill of lading, and who, after, or, as is the case here, before the goods were consigned to him and before their receipt or delivery, had sold them to a third party. An intermediate

consignee is not, under these circumstances, liable for freight. The defendants were not liable under the charter party or the bill of lading, because they were not parties to either. They were not liable as consignees, because they were not the owners of the goods and did not receive them. (Abbott on Shipping, 423; *Elwell* v. *Skiddy*, 77 N. Y. 282; *Blanchard* v. *Page*, 8 Gray, 281.) The defendants did not, in fact, discharge the cargo or receive it. It was received by the final consignee, the Long Island Railroad Company, to which the defendants, the intermediate consignees, had sold the goods before they were shipped. The rule which permits a jury to infer a contract to pay freight on the part of a consignee, not a party to the charter party, and a bill of lading, is applicable only in cases where the consignee has actually received the freight. (Abbott on Shipping, 420, 421; *Dart* v. *Ensign*, 47 N. Y. 619; *N. Y. & N. H. S. N. Co.* v. *Young*, 3 E. D. Smith, 192; *Morse* v. *Pesant*, 3 Abb. Ct. App. Dec. 321.) But if there were evidence that the present defendants did receive the goods, they would still not be liable, as they had, before the receipt of the goods at New York, in behalf of Mallonee & Co., sold them to the Long Island Railroad Company. (Parsons on Shipping, 208.) Even if the general rule be that a consignee is, in the absence of proof to the contrary, presumed to be the owner of the goods, and as such becomes liable for the freight if he receives them — still the presumption does not arise unless the consignee receive the goods, and it is rebutted by evidence, such as exists in the present case, that the original consignee had ceased to be the owner. (Add. on Cont. 507; *Ackerman* v. *Redfield*, 9 Hun, 378.) The defendants' statement to the plaintiff's attorney that the claim for freight was correct does not help the plaintiff. (1 Greenl. on Ev. § 209; *B. H. M. Co.* v. *Messinger*, 2 Pick. 223; *Bloxam* v. *Elsie*, 1 C. & P. 558; *Paine* v. *Tucker*, 7 Shepley, 138; *Moore* v. *Hitchcock*, 4 Wend. 293; *Polk* v. *Robinson*, 1 Tenn. 463.) The trial court further erred in allowing as the amount

for freight $1,667.55, with interest from July 12, 1891, instead of $1,663.83, with interest from the same date. (*May* v. *Schuyler*, 11 J. & S. 95.) The plaintiff was not entitled to any recovery on his claim for demurrage. (*Gage* v. *Morse*, 12 Allen, 410; *School* v. *A., etc., Co.*, 101 N. Y. 602; *Cross* v. *Beard*, 26 id. 85; *Van Etten* v. *Newton*, 134 id. 143.) The trial court was clearly right in holding (and the General Term erred in holding the contrary) that, even if the defendants were liable for demurrage, there was no evidence upon which more than a nominal amount could be awarded to the plaintiff. (*Nelson* v. *Mayor, etc.*, 131 N. Y. 15.) The General Term further erred in making itself an absolute award of the sum of $312 upon the plaintiff's cause of action for demurrage, instead of granting a new trial, so that the amount of the damage, if any, might be determined by a jury. (*Andrews* v. *Tyng*, 94 N. Y. 16.) If the judgment entered upon the verdict directed be affirmed, whether the amount of the recovery for freight be reduced or not, the order affirming the order denying defendants' motion for a new taxation of costs should be reversed, with costs, and an order made setting aside the taxation and directing the clerk to tax costs in favor of the defendants and against the plaintiff, and modifying the judgment accordingly. (Code Civ. Pro. § 738; *Bathgate* v. *Haskins*, 63 N. Y. 261; *Tilman* v. *Keane*, 1 Abb. Pr. [N. S.] 23.)

*Edward M. Shepard* for appellants. The consignee is *prima facie* the owner. (*Sweet* v. *Barney*, 23 N. Y. 335; *Krenden* v. *Ellison*, 47 id. 36.) The consignee becomes by implication a party to the contract, or charter party, and these defendants became not only by implication but under the facts of this case parties to the charter party. (Story on Bailments, 608; *Shields* v. *Davis*, 6 Taunt. 65.) The construction of the contract is for the court, not the jury. (*A. F. Ins. Co.* v. *Austin*, 69 N. Y. 470; *Donaldson* v. *McDowell*, 1 Holmes, 292; *Lockhart* v. *Falk*, 44 L. J. Exch. 105; *Francesco* v. *Massey*, 42 id. 75.) The bill of lading contains such a reference to the charter party that by accepting it and

the cargo covered by it, said defendants are bound by the terms of the charter party. (*Smith* v. *Sieviking*, 4 E. & B. 945; *Moller* v. *Young*, 24 L. J. Q. B. 217.) The defendants are liable for the damages stated in the charter party for every day's detention beyond the time required under the expression "customary dispatch" in discharging plaintiff's vessel's cargo. (*Brown* v. *Johnson*, 10 M. & N. 330.) The defendants did not discharge the cargo of plaintiff's vessel with "customary dispatch" after they provided a berth, and are liable for several days demurrage in that particular. (*Davis* v. *Wallace*, 3 Cliff. 123; *Thatcher* v. *B. L. Co.*, 2 Low, 362; *Keen* v. *Audenried*, 5 Ben. 535; *L. G. Co.* v. *Cusimano*, 10 Fed. Rep. 302.) Defendants are liable for nine days' demurrage. (*Born* v. *Johnson*, 10 M. & N. 833; *Sleeper* v. *Prig*, 17 Blatch. 44.) At no time did defendants suggest that there was any mistake or error in the amount of the freight, and presumably they knew just what they were saying when they stated, "the claim for freight is correct." This is an account stated. (*Lockwood* v. *Thorne*, 11 N. Y. 172; Story's Eq. Juris. § 526; *Willis* v. *Jernegan*, 2 Atk. 251.) The judgment is correct and plaintiff is entitled to costs. (*Tompkins* v. *Ives*, 36 N. Y. 77; *Johnston* v. *Catlin*, 57 id. 652.)

PECKHAM, J. The trial court directed a verdict for the amount of the plaintiff's claim for freight, together with six cents damages, for demurrage, and the judgment was thus duly entered, with costs. Both parties appealed, and the General Term, upon plaintiff's appeal, modified the judgment by increasing the amount allowed plaintiff for demurrage from six cents to three hundred and twelve dollars, and it affirmed the judgment upon defendants' appeal. The defendants have appealed here from the judgment as so modified, and also from several orders relating to costs, and to the amendment of the judgment as to the amount that should be directed upon the plaintiff's claim for freight. Upon the liability of the defendants for freight, we think, as the case appears here, the plain-

tiff had proved by uncontradicted evidence enough to warrant the court in directing a verdict.

The defendants, in addition to other evidence on the subject, admitted in so many words that plaintiff's claim against them for freight was correct. This did not preclude them from proving that the admission was erroneous, or from giving any other explanation of it that they could, but they did not prove anything of the kind, nor was any explanation of the admission attempted. It is, indeed, said that the course of the trial was such as to assume the sufficiency of certain hearsay evidence to prove the alleged fact that the defendants had sold the railroad ties to the Long Island Railroad Company, in behalf of the consignors thereof, before the vessel in which they were loaded left Charleston, and upon such alleged facts the defendants base their claim that they did not receive the cargo, and were not liable for the freight due the owners of the vessel upon its arrival at the dock of the Long Island Railroad Company. However that may be, we cannot say from a perusal of the record that this hearsay evidence was received or allowed upon the assumption that it proved the fact stated as hearsay. This hearsay evidence first came out in the course of the direct examination of a witness for the plaintiff who was giving material evidence in the case on the part of the plaintiff, and the mere fact that he stated some further matter as his understanding or as what he supposed to be true, cannot be grasped by the defendants as proof of the fact itself. This is true, even though on cross-examination as to what took place prior to the making of the charter party in question the witness reiterates his understanding that the ties which he was seeking a charter party to transport from Charleston had already been sold by defendants, as agents of the consignors, to the Long Island Railroad Company. It would seem from this record that the fact was stated as an understanding on the part of the witness, more for the purpose of identifying the ties than for any purpose of proving a sale, and the case fails to show that after this evidence had been so given the trial proceeded upon the theory

that the fact had been sufficiently proved. Sometimes it does appear from the record that the trial has proceeded upon a theory that certain facts were properly proved, yet on appeal the case presents no sufficient evidence of them. In such case and in furtherance of justice the facts will be assumed in accordance with the theory. We cannot find enough in this case to warrant us in doing it here.

Witnesses in giving evidence in the course of an oral examination frequently state as facts those things which they plainly have no personal knowledge of. It would be too strict practice to say that unless a motion is made and the objectionable evidence is stricken out either party can refer to it as proof of the fact itself. Even where a witness is asked for evidence which is plainly hearsay, and he gives it as such, it ought to appear from the course of the trial that the evidence was received as sufficient proof of the fact concerning which it was given or it will not be so regarded. Receiving a copy of a written document instead of the original, and without objection that the original should be produced, is obviously a very different case.

In such event there is a direct offer to prove the original paper by the production of the copy, and the party against whom it is offered is then put to his objection, and if he fail to object to the admission of the copy he of course ought not thereafter to be permitted so to do.

The learned trial judge refused to regard the fact of sale as proved by this hearsay evidence. It is clear he did not suppose that the trial had proceeded upon any theory that such fact had in that way been sufficiently proved. This should render an appellate court still more reluctant to make such an assumption, especially where the record is not at all clear that the theory was assumed by both counsel. That the learned counsel for the appellant assumed it and regarded the fact as sufficiently proved is without doubt true, but confined as we are to the record for proof we are compelled to say that we do not find sufficient evidence that the fact was assumed on the trial to permit us to make the assumption here.

Ignoring the hearsay evidence the case is then bare of proof that would call for the submission of the question to the jury, whether the railroad ties in suit had been sold by defendants to the Long Island Railroad Company before the arrival of the vessel at the port of New York. This was the only question upon which counsel for defendants asked to go to the jury after the denial of his motion for the direction of a verdict in their favor. Upon this branch of the case we cannot see that any error was committed by the trial judge.

Another and a different question is presented with regard to the plaintiff's claim for demurrage.

The General Term has raised the amount recovered against the defendants from six cents to three hundred and twelve dollars. This amount was arrived at by allowing six days for demurrage at the rate of $52 per day, as provided in the charter party. The provision in the charter party on the subject of demurrage was held to be binding upon the defendants, although they were strangers to the instrument. I am not aware of any provision of law which in such a case as this would permit the Supreme Court on appeal to add to the original judgment a sum which it finds from the evidence to be due plaintiff for demurrage, when the question as to what amount is due is one of fact upon which either party might demand the verdict of a jury. Aside from that question, however, there is the remaining and important one whether defendants upon this proof are liable in any sum whatever for demurrage. Demurrage, technically so called, is founded upon some contract entered into between the consignor or freighter and the ship owner, which, under certain circumstances, is held to be assumed by the consignee. (Abbott on Shipping, sec. 1, page 380, m. p. 303, *et seq.*) A delay beyond the time designated in the contract gives a cause of action in favor of the ship owner. Although it is said to be a claim in the nature of freight, yet it is perfectly distinct and separate therefrom. While a consignee, by accepting the goods consigned to him under a bill of lading by which the person receiving the goods is to pay freight, is held bound by an

implied contract to pay the freight, yet, unless the bill of lading, either itself or by reference to another instrument, contain also an express condition providing for the payment of demurrage, the consignee in simply accepting the goods will not be liable for the payment thereof. (*Jesson* v. *Solly*, 4 Taunt. 52; *Brouncker* v. *Scott*, Id. 1; *Evans* v. *Forster*, 1 B. & Ad. 118; *S. C.*, 20 E. C. L. 420; *Van Etten* v. *Newton*, 134 N. Y. 143.)

At the same time, while not liable strictly for demurrage, yet a consignee of the cargo who is also the owner thereof may be liable for damages in the nature of demurrage when the vessel is detained, through the fault of the consignee, an unreasonable length of time at the port of discharge. (*Ford* v. *Cotesworth*, L. R. [4 Q. B.] 127; *Scholl* v. *Albany, &c., Iron Co.*, 101 N. Y. 602.)

In such case not only must the detention be proved, but the damages and their nature must also be the subject of proof. There is no express contract to refer to for the purpose of computing the amount to be paid as demurrage, and hence in an action to recover damages of that nature, proof must be given of their existence and amount.

The plaintiff claims he has proved the defendants liable for demurrage in its strict technical sense, by reason of the provisions on that subject in the charter party. The argument is that the defendants as consignees of the cargo, and by receiving the goods under the bill of lading, have made themselves parties to it, and that the bill of lading by referring to the charter party has made that instrument part of the bill, and defendants are, therefore, liable to pay whatever the charterers are liable to pay by virtue of that instrument thus made part of the bill of lading. In order to maintain the proposition that the provisions of the charter party upon the subject of demurrage form part of the bill of lading, the plaintiff must show that the two papers form on this question substantially one instrument, and that the bill of lading by its reference to the charter party upon this very point of demurrage makes the provisions of the charter party upon that subject

part of the substance of the bill of lading itself, and thus any one who becomes bound by the receipt of the goods under the bill of lading, becomes bound to pay demurrage under the charter party as a part of such bill. We do not think this argument can rest upon the facts in this case. The bill of lading is itself silent upon the subject of demurrage, and after acknowledging the receipt of the ties in the port of Charleston, S. C., the agreement, as stated in the bill, is to deliver the same "unto order or to their assigns, he or they paying freight for the said ties as per said charter party and its conditions, with primage and average accustomed." The charter party contained specific provisions for the rate of freight, and when it was payable.

It also contained specific and separate provisions as to the lay days for loading and discharging, and the amount ($52) payable for each and every day's detention. This charter party was a contract between the ship owner and Mallonee & Co., the charterers, living at Charleston, and represented by an agent in New York, not the defendants, nor any one connected with them. We think the reference in the bill of lading to the charter party is plainly confined to the conditions of that instrument as to payment of the freight. The subject mentioned in the bill of lading is the cargo of railroad ties, and the agreement therein stated is to deliver the ties in New York to the consignees, he or they paying freight according to the conditions of the charter party. It would be a wide stretch to hold that by this language of the bill of lading, which plainly referred only to the provisions of the charter party as to the freight money, a consignee would become liable to demurrage if he accepted the cargo under such a bill.

The case of *Smith* v. *Sieveking* (4 E. & B. 945 ; *S. C.*, 82 Eng. C. L. R.) had language in the bill of lading much the same as this, and the Court of Queen's Bench (1855) held the defendants (consignees) not liable for demurrage. The language of the bill of lading was "he or they paying for the said goods as per charter party, with primage and average

accustomed." The charter party mentioned the rates of freight, and contained a stipulation that "for the payment of all freight and demurrage the captain shall have an absolute lien and charge on the said cargo." There was demurrage at the outport, and although the charter party provided for a lien on the cargo for all demurrage, yet it was held that obviously by the terms of the contract the *consignee* was not to pay for such demurrage.

In *Wegener* v. *Smith* (15 Com. Bench; *S. C.*, 80 Eng. C. L. R. 285) it was held that the jury might imply a contract on the part of the indorsee of a bill of lading to pay demurrage when the cargo was delivered under the bill to order " against payment of the agreed freight and other conditions, as per charter party." This is different language from that used in the case under consideration. The delivery was not alone upon condition of paying freight, but upon other conditions mentioned in the charter party, among these being a condition to pay demurrage. In the one case the delivery is not confined to the condition of payment of freight, and in the case at bar it is.

The plaintiff also refers as authority for his claim to *Moller* v. *Young* (24 L. J. 217, Common Law, 1855). The action was not, properly speaking, to recover demurrage, but was brought for detaining the ship an unreasonable time. The trial court at the Queen's Bench sittings in London directed a verdict for defendants on the admitted facts, with leave to enter verdict for fifty pounds for plaintiff, the court being at liberty to draw all inferences of fact. The damages sustained were in this way admitted to be fifty pounds if plaintiff were entitled to any, or the court could infer it from the facts in the case the same as a jury might. The court, on appeal, directed a verdict to be entered for the plaintiff. There is nothing to show any intention of overruling the cases above cited, which hold that there must be a specific contract to pay demurrage, and that in the absence of it it will not be implied. And if the bill of lading be silent on the subject of demurrage, and do not make the charter party on that particular

subject part of itself, no contract is proved from an acceptance of the cargo under a promise to pay freight as provided by the charter party.

In *Porteous* v. *Watney* (47 L. J. 643, Common Law Court of Appeal, 1878), also cited by the plaintiff, the bill of lading contained the words "paying freight and other conditions as per charter party." The charter party contained stipulations in detail providing for demurrage. The consignee was held liable for the payment of the same. In this case the court recognizes the rule that when the bill of lading only refers to the charter party by way of stating the terms of freight, such reference does not impose an obligation upon the consignee, or assignee, or other holder of the bill of lading to perform any other conditions of the charter generally. The opinions of THESIGER, COTTON and BRETT, Lords Justices, are plain upon this point.

I have been able to find no case where language in a bill of lading, such as is contained in this one, has been held to make the provisions of the charter party upon any other subject than the payment of freight part of the bill of lading.

We come then to the question of liability of defendants as consignees and presumed owners of the ties, for the payment of damages in the nature of demurrage for an improper detention of the vessel. On this branch the plaintiff has wholly failed to prove any damage whatever. Because the defendants might have been liable to pay those damages which the plaintiff might have proved if he had sustained them, is no reason for allowing the plaintiff to recover even a nominal sum by way of damages, when no amount of damages whatever has been proved. The plaintiff chose to plant himself upon his alleged right to recover demurrage technically so called, and for that purpose he refers to the bill of lading and charter party as forming a contract on defendants' part to pay a certain sum daily for each day's detention proved beyond the number allowed in the charter party. This claim, as we have seen, he cannot make good, and there is no reason why he should be permitted to recover even a small sum unproved,

especially when the effect might be to saddle costs of the litigation, otherwise payable by plaintiff, upon the shoulders of the defendants. The plaintiff says he was entitled to a recovery of six cents, if for no other reason than to establish a principle. I see no principle that is established by such a judgment. In an action of trespass upon real estate where title comes in question it is easily understood that a verdict of six cents may be of the greatest value to plaintiff as establishing his title to the land so far at least as the defendant is concerned. No such principle obtains or can obtain in such an action as this. The cause of action of plaintiff in such a case consists of two branches, one to establish an unjust or unreasonable detention by defendants, and the other to show the damages which plaintiff sustains by reason of such detention. A failure to prove either fact, unlawful detention or damage ensuing, is a failure to prove a cause of action, and a plaintiff in failing to prove any damage whatever is not entitled to a judgment for nominal damages. It is not a case where the law will presume damage. It is a fact to be proved.

We think the best that can be done in this case is to reverse the judgment and grant a new trial, costs to abide the event, unless the plaintiff shall consent to reduce the judgment by striking out any recovery whatever for demurrage. In case such consent shall be given, then judgment shall stand for the reduced amount, subject to any further reduction if any shall be allowed by the decision of the court upon defendants' application for costs by reason of the offer made by them. No costs on this appeal are allowed to either party in case the judgment is affirmed by consent of plaintiff as reduced, and in that case the order denying motion to modify verdict is affirmed. The order denying defendants' application for taxation of costs must, in event of affirmance of the judgment by consent, be reversed, with leave to defendants to renew such motion upon the facts as now existing.

Judgment will accordingly be entered in accordance with this opinion.

All concur.

Judgment accordingly.