Atkinson, J.,
delivered the opinion of the court:
The owners of the steamship Nyanza, who are subjects of Great Britain, bring this suit to recover damages by way of demurrage for detention of said steamer while unloading a cargo of coal consigned under a bill of lading to the naval forces of the United States at Manili, P. I., during the months of July, August, and September, 1898, and certain other alleged losses incident to such detention.
May 13, 1898, the plaintiffs chartered their steamship Nyanza to Henry J. Withers, of Australia, to convey a cargo of coal from New South Wales, Australia, to one of several points mentioned at or near Manila, P. I., the definite point not being specified because of a state of war then prevailing between the United States and Spain. The charter party provided that the cargo was to be taken by the consignees at the port of discharge at the average rate of 400 tons per day, excluding Sundays, the charterers or their agents having the option of keeping the steamer on demurrage for ten days at £70 sterling per day, payable daily.
Before the arrival of the steamer at Cavite, July 15, 1898, it appears that the admiral in command of the United States naval forces at Manila had received and held a bill of lading for the cargo of coal, although it was not known to the commander of the vessel, prior to his arrival at Cavite, to whom the cargo of coal had been consigned. The coal was discharged from the vessel under the directions of the admiral in command, but not at the rate of 400 tons per day, as provided in the charter party. The vessel was detained in port for forty-six days beyond the time allowed by charter party for unloading, and the admiral stated to the commander of the vessel that he was directed by the Navy Department to *101 pay only £44 Os. 8d. demurrage per day while the vessel was unloading, which amount was paid and was received as demurrage under protest by the commander of the vessel, who demanded £70 demurrage per day, as provided by the charter party.
The defendants contend that if recovery can be maintained in this action it must be based upon a contract between the plaintiffs and defendants; that plaintiffs were not privy to the contract for the purchase of the coal; that the contract was entered into between Macondary & Co., San Francisco, Cal., and the defendants; that the plaintiffs were not even aware that the coal had been purchased from Macondary & Co. until after the coal had been accepted by the admiral in command of the United States navy at Manila, and that plaintiffs did not know that the coal they were carrying was, or was to become, the property of the United States. Hence, it is urged that it can not be claimed that this suit can be predicated upon the provisions or any of the obligations arising from the contract between the defendants and Mac-ondary & Co.
Plaintiffs insist that they were not in privity with, and therefore are not bound by the terms of the contract between Macondary & Co. and the defendants; that the contract was made in San Francisco between the Bureau of Equipment of the Navy Department at Washington and the firm of Macon-dary & Co. on May 21, eight days subsequent to the signing of the charter on behalf of Withers in London on May 13, hence nothing was said or could have been said to the owners of the steamer at the time the charter was executed in London relative to any contract which may have been in contemplation between the defendants and Macondary & Co. They further maintain that the defendants received and held the bill of lading under which the cargo arrived at Cavite, and demanded and received possession of the cargo in pursuance of the provisions of the charter party, and being charged with notice of the conditions of the charter party and bill of lading, and also by demanding and receiving the cargo under their provisions, they became bound by their terms, and therefore stand in relation of privity of contract thereunder.
*102 It is clear that the consignee and a lading, who is the owner of the goods and of the bill of lading, and who accepts the goods under a bill of lading, is bound by its terms. If he accept the goods under the bill of lading (as was 'done in this case) and agrees to receive the goods within a reasonable time or within an agreed time, he is, therefore, bound to pay in demurrage what the contract and the bill of lading require for the delay, should delay occur. The vessel is not bound to look beyond the owner and holder of the bill of lading, because the holder of the bill of lading has the right to control the delivery and the acceptance of the goods under it. For any unreasonable delay in the acceptance of the goods and in enabling the vessel to deliver the same he, therefore,' becomes primarily responsible. (O'Connell v. 1002 Bales of Hemp, 75 Fed. R., 408; Carv. Carr. by Sea, 671, 672; Scrutton Charter Parties, 36, 39, 40; Gardner v. Trechmann, 5 Asp., 558, 559; 2 Pritch Adm. Dig., 485, 615; Neilson v. Jessup, 30 Fed. R., 138; Dayton v. Parker, 142 N. Y., 391; Gabler v. Freeman, 29 Md., 273; Falkenberg v. Clark, 11 R. I., 278; North German Lloyd v. Heule, 44 Fed. R., 100; Taylor v. Fall River Iron Works, 124 Fed. R., 826; Graham v. Planters’ Compress Co., 129 Fed. R., 253; Crawford v. Mellor, 1 Fed. R., 638.)
We are of the opinion that the defendants, after accepting the cargo of coal pursuant to the bill of lading, are bound by the terms of the charter party therein referred to, and became privy thereto, and are accordingly liable to the plaintiffs for any damages growing out of any violation of its terms.
It now becomes necessary for the court to determine the amount of damages, if any, sustained by the plaintiffs. Five different items of alleged damages are claimed by them, as follows:
Item 1. — This is a claim for the difference between the amount paid for the lay period of ten days and the amount provided by the charter party. The charter party required payment of £70 demurrage per day for ten days after the Nyanza arrived at her port of destination. Having already decided that the defendants, having accepted the cargo of *103 coal under the bill of lading, are bound by the charter party therein referred to, it necessarily follows that they are liable for the sum of £70 demurrage per day for the first ten days that the vessel was in port, which would leave a balance due them, after deducting $2,142.88 which was paid to them, of $1,263.67 under this item.
Item 8. — Plaintiffs demand pay also during the forty-six days’ detention of the vessel beyond the ten days allowed as the charter period for the delivery of the coal. The Nyanza was a steel steamship of 4,053 tons net and was worth about $300,000. When the charter was signed the owners allowed the charterers ten days’ demurrage at £70 per day, but refused to allow a day longer at that rate, because they valued the earning capacity of their vessel at a much greater rate. For this reason they contend that the defendants must make full compensation for the damages sustained at proper and reasonable rates.
We have found that £90 per day was reasonable compensation for the 46 days beyond the 10 days’ lay period, and therefore allowance should be made, under this item, to plaintiffs for said 46 days at £90 per day, which in United States currency would be $20,147.31. Deducting therefrom $9,857.25, the amount paid by defendants, would leave a balance due plaintiffs of $10,290.06.
Item 3. — This is a claim for the fouling of the vessel’s bottom during her long detention at Manila. The amount claimed under this head by plaintiffs is $4,447.18.
It is contended by plaintiffs that as a result of the forty-six days’ detention of the Nyanza at Manila it became necessary to dock the vessel and paint her bottom, which was done at Sydney, Australia, at a total cost of $4,477.18: $1,459.96 is the actual cost of docking, and the balance of the total amount claimed is for seven days’ loss of time of the steamer in getting to and from Sydney and while docking.
It is not disputed that the vessel was docked at an actual cost of £300, sterling. Neither is it denied that seven days were consumed in getting the vessel to and from the docks; but it is disputed that the forty-six days’ detention at Manila was the sole cause of the necessity for such docking, and that *104 while such detention might have added somewhat to the fouling of the steamer’s hull, yet it would nevertheless have been necessary to place her on the docks at an early day thereafter had no detention occurred. It does not appear that it required a greater length of time to go through the docking process at Sydney than it would have taken in England, or indeed, at any other port; consequently, it is insisted that the defendants are not chargeable for the seven days’ loss of time claimed by plaintiffs in this item for going into and returning from the docks.
While it may be true that the necessity for drydocking was in part the result of the breach of the obligation on the part of the defendants in detaining the vessel for forty-six additional days at Manila in violation of the provisions of the charter party and the bill of lading, yet it does not appear that it was the whole cause. Furthermore, the demurrage allowed for the detention includes such incidental expenses as would necessarily have been incurred in keeping the vessel seaworthy had there been no detention. That is to say, it is not shown that because of the detention of the vessel in the harbor of Manila as a result thereof, independently of the usual action of the sea, the vessel’s bottom became foul. Therefore, no allowance is-made for this item.
Item 4-. — Testimony was adduced under this item for the purpose of showing that the claimants, by reason of the forty-six days’ detention of the Nyanza at Manila, lost an opportunity to carry a cargo of wool from Australia to England during the wool-shipping season of 1898, upon which it is claimed they would have realized £2,000, sterling, more profit than was realized by them on the cargo of sugar which was thereafter actually carried on said vessel, and for which they were paid. But assuming that by reason of the detention the plaintiffs were prevented from carrying a cargo of wool, the profits arising therefrom would necessarily be problematical. Such claim for loss or damage, therefore, is clearly too remote to allow recovery on account of the detention of the vessel.
It is elementary that the damages for a breach of contract which can be recovered are those only which are the proxi *105 mate or natural consequence of the breach. It is often a difficult matter to determine what is the proximate or natural cause of certain damages. As was said by Judge Agnew in Fairbanks v. Kerr (70 Pa. St., 86, 89), “ Many cases illustrate, but none define, what is an immediate and what is remote cause. Indeed, such a cause seems to be incapable of any definition which will suit in every case.” It is safe to say, however, we may add, that among the general rules for the recovery of damages are the following: That they must be the natural and proximate consequence of the wrong done; not the remote or accidental result. And special damages can be recovered only when they are not too remote, and are specially counted on and claimed in the complaint. What are termed speculative damages — that is, possible or even probable profits that could have been realized but for the breach of a contract charged against a defendant — are too remote and can not be recovered. It is well settled law that remote, contingent, or purely speculative damages can not be recovered for the breach of a contract, and it is generally agreed that speculative profits can not be recovered' for breach of contract; and sometimes the rule is stated more specifically, that no claim for profits can be recovered at all. (Smith’s Leading Cases, 8th Edition, 576.)
In the case of Harper v. Miller (27 Ind., 277) the court decided “ that in a suit to recover damages for the nondelivery of goods the damages sustained by the purchaser by reason of his inability, in consequence of such nondelivery, to fulfill a contract or sale made by him for the same goods are too remote.”
In the case of Lawrence v. Wardwell (6 Barb. (N. Y.), 423) it was held by the court that “ in an action by a lessee against the lessor to recover damages for a refusal to give possession of the demised premises the plaintiff can not, for the purpose of showing the amount of damages sustained, give evidence of an advantageous contract for the assignment of the lease, or of an offer to purchase it, by any other person.” To the same effect, in the case of Washington Ice Co. v. Webster (62 Me., 341), the court held that “the damages arising from the possible loss of customers, in not having the *106 goods ready for sale, or in purchasing goods of the same description as those replevined to fulfill existing contracts, are too remote, contingent, and indefinite to become an element of damages.”
In the case of the V. & M. R. R. Co. v. Ragsdale (46 Miss.), where a suit was instituted to recover damages for failure to deliver certain mill machinery within a specified period of time, the court, among other things, said (p. 468) : “ But profits or gains derivable from a contract, which are contingent and speculative in their nature and dependent upon the fluctuations of the markets and the chances of business, such as the supposed successful operation the party might have made if he had not been prevented from realizing the proceeds of the contract at the time stipulated, are not to be taken into the estimate of damages. For, besides the uncertain and contingent issue of such an operation, in itself considered, it has no legal or necessary connection with the stipulations between the parties, and can not, therefore, be presumed to have entered into their considerations at the time of the contract.”
See also the following cases: Bridges v. Lanham, 14 Neb., 369; Willingham v. Hooven, 74 Ga., 234; Cuddy v. Major, 12 Mich., 368; Phuyfe v. Railroad Co., 37 Hun. (N. Y.), 377; Griffin v. Colver, 16 N. Y. R., 489; Barnard v. Poor, 21 Pick., 378; Fox v. Harding, 7 Cush., 516; Sedg. on Damages, 57-69, and cases there cited; N. A. Transportation Co. v. Morrison, 178 U. S. R., 262.
We, therefore, decide that this item must be disallowed.
Item 5. — The plaintiffs allege that in consequence of the detention of the Nyanza for the forty-six days at Manila certain cable expenses were necessarily incurred and paid' by the plaintiffs in the sum of £101 11s. 8d., or in money of the United States $494.35, for which they ask compensation^
There is no proof tendered as to the necessity of the expenditure of this large sum of money for telegraphing, except the mere statement of one of the plaintiffs that such an amount was paid out as a result of the detention of the vessel. No copies of telegrams are offered (except one), nor does it appear why it was necessary for the expenditure of *107 this large sum of money for such cable messages. Not knowing, except in one instance, what the alleged cable messages contained, it is impossible for the court to determine whether they were the proximate and natural consequence of the detention of the vessel. No allowance for this item can, therefore, be made.
On the whole case we decide that plaintiffs shall recover from the defendants the sum of $11,553.73, and that judgment for the same is hereby ordered.