# THE ARIZPA.

## UNITED STATES v. CONSOLIDATION COAL CO.

### No. 3406.

Circuit Court of Appeals, Fourth Circuit.
Jan. 31, 1933.

Myron H. Avery, Admiralty Atty., U. S. Shipping Board, of Washington, D. C. (Simon E. Sobeloff, U. S. Atty., and J. K. Cullen, Asst. U. S. Atty., both of Baltimore, Md., on the brief), for the United States.

W. Ainsworth Parker, of Baltimore, Md. (Brune, Parker, Carey & Gans, of Baltimore, Md., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The decree of the District Court dismissed as insufficient a libel in personam brought by the United States as owner of the steamship Arizpa in admiralty against the Consolidation Coal Company to recover demurrage incurred in the discharge of the vessel at Civita Vecchia, Italy. The libel shows that on May 23, 1929, at New York, the United States entered into a charter party with the coal company whereby the ship was hired for the carriage of a complete cargo of coal from Baltimore to a safe port on the west coast of Italy.

The charter party provided that the cargo should be taken off at the port of discharge by the consignee at a specified rate per day, and, if longer detained, required the consignee to pay demurrage at a specified rate. The charter also contained a cesser clause in the following terms: "The charterer's liability shall cease as soon as the cargo is shipped, and freight, dead freight, and demurrage in loading, if any, are paid, the owner having a lien on the cargo for freight, demurrage and overage." No dead freight or demurrage in loading accrued, and the freight for the transportation was paid by the coal company on July 3, 1929. Previously, to wit, on June 29, 1929, upon the completion of the vessel's loading at Baltimore, a bill of lading was issued to the coal company, which acknowledged the shipment of the cargo by the coal company and set out an agreement to make delivery to the coal company or its assigns at Civita Vecchia, Italy, all conditions of freighting, as per charter party. It was also agreed therein that all the clauses and conditions of the

charter party should be considered to be incorporated in the bill of lading as fully as if stated therein. The coal company indorsed the bill of lading and delivered it to an Italian corporation, which received the coal at the port of discharge. Demurrage in discharging the cargo for a period in excess of two days was incurred.

It will be observed that the coal company was the charterer of the ship, and, at the same time, shipper and consignee of the goods. As charterer, it was relieved of liability if the cesser clause was effective; and such a clause is effective as to a charterer when the lien for which it provides is commensurate with the liability which, except for the clause, the charterer would assume. Crossman v. Burrill, 179 U. S. 100, 107, 108, 21 S. Ct. 38, 45 L. Ed. 106. The lien provided for in the charter party is adequate for this purpose, and it is conceded that if it was enforceable in Italy, the libelant has no case against the coal company as charterer. Since there is nothing in the libel to the contrary, the presumption is that the law of Italy as to the maritime lien of the ship on the goods for demurrage at the port of discharge is the same as the law of the United States. Heredia v. Davies (C. C. A.) 12 F.(2d) 500. Compare Cuba R. R. Co. v. Crosby, 222 U. S. 473, 32 S. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40.

The appellant, however, contends that the coal company is liable for the demurrage in its capacities as shipper and as consignee of the goods. We consider first its liability as shipper. The provisions of the charter party in regard to demurrage in case of delay at the discharging port were incorporated in the bill of lading under its express terms, and the contention is that thereby the obligation was imposed upon the shipper, notwithstanding the provision that such demurrage should be paid by the consignee. Ordinarily, the primary obligation to pay the carrier's charges rests upon the shipper even when the bill of lading in terms imposes a liability upon the consignee. Louisville & N. R. R. Co. v. Central Iron & Coal Co., 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900. And the obligation survives although the shipper has assigned the bill of lading to another who receives the goods. United States v. United States Steel Products Co. (D. C.) 27 F.(2d) 547; Main Island Creek Coal Company v. Chesapeake & Ohio Ry. Co. (C. C. A.) 23 F.(2d) 248; Tweedie Trading Co. v. Pitch Pine Lumber Co. (D. C.) 146 F. 612; Davis v. Smokeless Fuel Co. (C. C. A.) 196 F.

753; Tweedie Trading Co. v. Strong & Trowbridge Co. (C. C. A.) 195 F. 929.

None of these cases involved the cesser clause in a charter party. But the appellant contends that this difference is unimportant because the cesser clause applies only to a charterer, and does not affect the obligations of one who is the shipper in a bill of lading, even when the terms of the bill of lading incorporate the provisions of the charter party. It is said that this rule is established in Gullischen v. Stewart Bros., 13 Q. B. D. 317, 5 Aspinall's Maritime Cases, 130, 200, and the authorities which have followed that case. Carver on Carriage of Goods by Sea, § 651; Scrutton on Charter Parties and Bills of Lading (6th Ed.) Article 19; Poor on Charter Parties, 67; Repetto v. Millar's Karri and Jassah Forests Limited, 2 K. B. (1901) 313; Yone Suzuki v. Central Argentine Ry. (C. C. A.) 27 F.(2d) 795; The Eliza Lines (C. C.) 61 F. 308. In Gullischen v. Stewart Bros., the provisions of the charter party and the bill of lading relevant to this discussion were similar to those in the instant case, and it was held that, in spite of the cesser clause, the respondents were liable for demurrage at the unloading port, not on the ground, however, that they were shippers, but because they received the goods from the ship as consignees. It was not thought possible that the parties intended to nullify the bill of lading as a contract to the extent of destroying the obligations it was designed to impose; and so it was held that the cessation of liability upon the payment of freight and demurrage at the loading port did not extend to the liability incurred by the consignee who received the goods under the bill of lading at the port of discharge. In short, as was said in Bailey v. Manufacturers' Lumber Co. (D. C.) 224 F. 806, 809, the effect of the cesser clause, as it has been construed by the courts, is to relieve only from those liabilities which are capable of transference to the cargo or the consignee under the bill of lading.

We do not think, however, that the cesser clause loses its effect merely because the charterer becomes the shipper and accepts a bill of lading. The cesser clause must be given effect so far as it is consistent with the underlying purpose and intent of the parties to the contract, consisting of both the charter party and the bill of lading; and we see no reason why it should not apply to a shipper so as to relieve him from liability for demurrage at the port of discharge. If the charges incurred at the loading port are paid, and the obligations which can be transferred

to the cargo and the consignee are not disturbed, the clause may be given its primary effect of relieving the charterer-shipper ·of liability at a distant port without jeopardizing the right of the shipowner to· be paid for the charges which arise at that place. In the cases of The Hans Maersk (C. C. A.) 266 F. 806, and Yone Suzuki v. Central Argentine Ry. (C. C. A.) 27 F.(2d) 795, as in the pending case, the charter party contained the ·· cesser clause, and the bills of lading were issued to the charterer as shipper, calling for the delivery of the goods unto order or as-·signs. Demurrage was incurred at the port ·of discharge and a libel was filed against the ·consignee and receiver of the goods, who in ·turn impleaded the charterer. The point that the charterer was liable as shipper of ·the goods does not seem to have been raised; but it was held in each case that the respondent was not liable for demurrage incurred in the discharge of the cargo.

■ The shipowner also relies upon the fact that in this case the respondent coal company was expressly named as consignee in the bill of lading, to which it was a party, and it is contended that thereby the coal company assumed the obligation of the consignee to pay demurrage, even though it did not actually receive the goods; and that it could not relieve itself of this liability by assigning the ,contract, because, while one may ordinarily ·assign his rights under a contract, he may not assign his liabilities.

The word "consignee" in its ordinary and ·usual significance indicates a person residing :at the port of delivery to whom the goods are ·to be delivered when they arrive. Wolf v. Horncastle, 13 E. R. C. 265, 272. He is not ·usually .a party to the charter party or to ·the bill of lading, and becomes charged with ·the obligation to pay for demurrage only ·by implication from the acceptance of the :goods under the bill of lading. The reason ¨for the rule is said to be that the carrier looks :to the consignee for payment, and waives its lien upon the goods by delivery in reliance upon the implied contract, Union Pacific Ry. Co. v. American S. & R. Co. (C. C. A.) 202 F. 720; Yone Suzuki v. Central Argentine Ry: Co. (D. C.) 275 F. 54; and the tendency in the American courts has been to impose the obligation to pay demurrage upon the person receiving the goods when the bill of lading provides that the consignee shall pay freight or demurrage. The Lake Galera (C. C. A.) 60 F.(2d) 876, 879; New York Central R. R. Co. v. Warren Ross Lumber Co., .234 N. Y. 261, 137 N. E. 324, 24 A. L. R. .1160 and note.

Bearing in mind these well-known facts and the practices to which they relate, it is obvious that the term "consignee," as used in the charter party in this case, might be taken to mean the person receiving the goods at the port of discharge quite as well as the person named as consignee in the bill of lading. That document, it is true, named the shipper as consignee, by providing for the delivery of the goods to the shipper, or its assigns; but this form is frequently used in place of an order bill of lading which does not name a consignee but calls for delivery unto order or assigns; the chief purpose in each case being to retain title to the goods in the shipper and control over them until payment is assured with the ultimate intention of assigning the bill to the purchaser at the port of destination. We must construe the whole contract of shipment so as to give full effect to the plain purpose of the cesser clause to relieve the shipper from obligations which arise at the port of discharge, if it can be done without doing violence to the remaining provisions of the documents; and the solution is at hand .if we give to the term "consignee" in the charter party the significance which it usually bears, of the actual receiver of the goods at the point of destination. By so doing, the spirit and intent of the contract will be carried into effect.

The libel ·did not state a case against the respondent, and the decree of the District Court dismissing the libel is therefore affirmed.