## ZARATI S. S. CO. v. PARK BRIDGE CORPORATION et al.

### Nos. 135, 184.

Circuit Court of Appeals, Second Circuit.

March 20, 1946.

CLARK, Circuit Judge, dissenting.

———————◆———————

Hill, Rivkins & Middleton, of New York City (George B. Warburton, of New York City, of counsel), for appellant.

Benjamin Siegel of New York City (Benjamin Siegel and Benjamin Brownstein, both of New York City, on the brief), for Howard Smith & Co., Inc., defendant-appellee.

Abraham L. Pomerantz, of New York City (William E. Haudek, of New York City, of counsel), for defendant-appellee Park Bridge Corporation.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

On the first of November 1944, the defendant Petroleum Equities Corporation, a New York corporation, chartered the S.S. Sagona from her owner the Zarati Steamship Company, a corporation of the Republic of Panama, to carry a cargo of stem bananas from Baracoa, Oriente, Cuba to Port Everglades, Florida. The charter-party provided that freight should be one cent per pound with a minimum of six thousand dollars, in addition to which the plaintiff was to receive one-half of any net profits derived from the importation and sale of the cargo of bananas. Demurrage charges of six hundred dollars per day and pro rata for any fraction of a day were provided for any delays in loading or discharge occasioned by the charterers.

Petroleum was neither experienced in the produce business nor able to finance the venture alone; so, on November 14, 1944, it entered into a contract with the defendant Howard Smith & Co., Inc., a New York corporation engaged in the business of produce merchants, by the terms of which Smith was to receive the bananas, transport them to an appropriate market, and sell them. Smith was to receive a 7% selling commission and 25% of any net profits, losses were to be shared equally by Petroleum and Smith.

Smith, however, did not furnish the funds to finance the undertaking initially. It had on November 9, 1944, entered into a loan agreement with Park Bridge Corporation, a New York finance corporation, which agreement had been incorporated by reference into the aforementioned contract of November 14. This agreement provided that Park Bridge would open a letter of credit with the Banco Agricola Industrial, Banes, Cuba, for approximately $13,500; that before it did Petroleum would execute and deliver to Park Bridge its promissory note, with endorsements, for $3,905 and in addition would assign as security a royalty interest which it held in certain properties; and Smith agreed unconditionally to pay Park Bridge $10,000, or proportionately less if the letter of credit were not used to the full, a certain number of days after arrival of the bananas. Also Park Bridge was to receive the documents of title which were then to be turned over to Smith under a trust receipt.

The Sagona was loaded and arrived at Port Everglades on November 22, 1944 with the bananas which were later delivered to Smith, the plaintiffs then being entitled to freight, both loading and discharge demurrage, and expenses totaling $7,212.43. Smith as named consignee and as trustee presented the bills of lading. These bills were drawn without reference to the charter-party and provided for delivery to Smith "or assigns he or they paying freight." The plaintiff, without being paid, but, as is shown by affidavit but not alleged in the complaint, on the express promise of Smith's president that Smith would pay the charges, delivered the bananas to Smith which shipped them to New York and there sold them. The plaintiff then secured a letter from Petroleum to Smith author-

izing and consenting to payment of plaintiff's charges from the net proceeds in Smith's hands. The sale resulted in a loss and the plaintiff has not been paid.

The plaintiff, relying on diversity as the ground of federal jurisdiction, sued all three of the named defendants alleging causes of action in the alternative against each of them upon different theories. The charterer Petroleum is not a party to this appeal; and no decision has as yet been made below in the action against it. The District Court, acting through one judge, denied plaintiff's motion for summary judgment against Smith and granted Smith's cross-motion for summary judgment and dismissal of the complaint and the plaintiff appealed. Subsequently, the Court, acting through another judge, granted Park Bridge's motion for summary judgment, dismissed the complaint as to it, and denied plaintiff's cross-motion for summary judgment. The plaintiff then appealed from that order. These two appeals were heard together.

■ Inasmuch as the charterer's liability remains unresolved, the first question is whether the orders here appealed from are final orders so that there is appellate jurisdiction. If the parties-defendant below had been in the position of indemnitor and indemnitee, Oneida Nav. Corp. v. W. & S. Job & Co., 252 U.S. 521, 40 S.Ct. 357, 64 L.Ed. 697, or of principal and agent, Hohorst v. Hamburg-American Packet Co., 148 U.S. 262, 13 S.Ct. 590, 37 L.Ed. 443, or if the alleged liability of the defendants had arisen from the same set of facts constituting a single tortious act, Kuhn v. Canteen Food Service, Inc., 7 Cir., 150 F.2d 55; Hunteman v. New Orleans Public Service, Inc., 5 Cir., 119 F.2d 465, certiorari denied 314 U.S. 647, 62 S.Ct. 89, 86 L.Ed. 519, in all of which the liability in the first place of each defendant would have been dependent upon or interrelated with the liability of each other defendant, then the order entered as to one defendant before disposition of the cause of action as to all defendants would not have been an order disposing of the entire cause and thus would not have been final and appealable. But, as will be seen from the discussion below, the causes of action against each defendant herein are predicated upon separate facts and separate theories, even though they all grow out of a single business venture. The liability of the charterer depends upon whether it has breached the provisions of the charter-party, whereas the liability of the present appellees, if there is any, depends upon the legal effect of their own later acts and undertakings. The plaintiff could have sued each of the defendants in a separate action, and if it proved its cause, would have been entitled to a judgment for the full amount against each. The fact that the plaintiff would be entitled to satisfaction of only one judgment or to only the amount for which it sues each does not make the causes "joint" or "derivative." The bases of each action are different, and the liabilities several and primary. The orders here do not affect determination of the charterer's liability. An appeal will lie from each of these orders. See Curtis v. Connly, 1 Cir., 264 F. 650, affirmed 257 U.S. 260, 42 S.Ct. 100, 66 L.Ed. 222; Reeves v. Beardall, Ex'r, 316 U.S. 283, 285, 286, 62 S.Ct. 1085, 86 L.Ed. 1478; Williams v. Morgan, 111 U.S. 684, 699, 4 S.Ct. 638, 28 L.Ed. 559.

■ As against defendant Smith, the plaintiff now relies on three theories. The first is really a mixture of three other theories: (a) that the contracts among the three defendants are so closely interrelated as to make it proper for the plaintiff who has expressly contracted with only one of the three to sue any one of them as principal; (b) that the contracts between Petroleum and Smith concerning allocation and payment of expenses, and the contracts between Smith and Park Bridge under the trust receipt, established a third-party beneficiary contractual obligation from Smith to plaintiff; and (c) that by the trust receipts agreement, Smith constituted itself an express trustee of the proceeds of the sale in favor, among others, of the plaintiff.

The first of these is a novel theory the bases of which are not quite made clear; and we are cited to no authority advancing or explaining it. In any event, there has been no sufficient showing of the interrelation of all the contracts to enable the plaintiff to recover from Smith as a party to the charter on that ground even if it were otherwise tenable. Nor can Smith be held as an undisclosed principal, because, at the time of making the charter-party, Petroleum and Smith had not entered into their contract of co-adventure, see 1 Restatement, Agency (1933) § 186, and comment b; nor can that later agreement be considered as a ratification or affirmance inasmuch as there is no allegation or show-

ing that Petroleum purported to act as an agent or as one party in a joint adventure in making the charter-party. See Id. at §§ 82, comment b, 93(1) ; 2 Ibid. § 319. Nor can the latter two parts of the plaintiff's first ground for reversal be supported by the phrases abstracted from the various agreements among the defendants. All of these statements referred either to the allocation of the initial burden of the expenses between Petroleum and Smith or to the protection of Park Bridge's security interest in the documents of title and the bananas represented thereby. The contracts do not in terms, and were not intended, to make plaintiff a contractual or trust beneficiary.

■ The second theory is one not expressly pleaded, but some of the facts relied on appear in the complaint, and some were presented by affidavit. It is that the plaintiff was induced to part with possession of the bananas without payment of the freight by an express promise of Mr. Solomon, Smith's president, that, if the plaintiff would do so, Smith would pay the freight and demurrage charges. If this contention is proved, it is plaintiff's strongest case for recovery from Smith, either on the resulting unilateral contract, 1 Restatement, Contracts (1932) § 12, or on the theory of promissory estoppel, 1 Williston, Contracts (Rev.Ed.1936) § 139; 1 Restatement, Contracts (1932) § 90, or on a comparable tort doctrine of reliance, cf. 4 Restatement, Torts (1939) §§ 872, 894. The trial judge concluded that there was no occasion for the application of this doctrine of "express privity" and so failed to resolve that issue of fact. We think this was erroneous and that the order must be reversed and the cause remanded for the determination of that issue.

■ The third ground upon which the plaintiff relied is the so-called "doctrine of implied privity," i. e., that the presentation of the bills of lading to the carrier by the named consignee Smith and the acceptance of the goods thereunder raised a prima facie implication of fact that that consignee agreed to pay the carrier's freight charges in consideration of the carrier's relinquishment of its lien. See Moller v. Young, 25 L.J.Q.B. 94, 96; The Arizpa, 4 Cir., 63 F.2d 42, 44; Pittsburgh C., C. & St. L. R. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151, 1153; Louisville & N. R. Co. v. Central I. & C. Co., 265 U.S. 59, 70, 44 S.Ct. 441, 68 L.Ed. 900;

Illinois Steel Co. v. Baltimore & O. R. Co., 320 U.S. 508, 513, 64 S.Ct. 322, 88 L.Ed. 259; Carver, Carriage of Goods by Sea, 7th Ed. 1925, §§ 603, 606. But this implied privity is in every case a question of fact. Smith presents in its brief several conclusions of fact as rebuttal; but none of them necessarily creates an inference contrary to the initial possible inference. Nor does the fact that Smith had certain obligations to Park Bridge under the trust receipt alter its status as consignee. Had Smith been an agent of Park Bridge and known to the plaintiff to have been an agent, its receipt of the goods would not alone have been sufficient from which to infer prima facie a personal promise to pay the freight. See Carver, op. cit. supra at § 605. But here Smith was a coadventurer with Petroleum; a debtor of Park Bridge and holder of bills subject to a security interest in favor of Park Bridge.

It would seem that the theory of "implied privity" would include all charges of the carrier for transporting the goods, including demurrage. But here, if the implication of fact is not found to have been rebutted, there is an unilateral contract made in Florida probably to be performed in New York where Smith has its offices and where the plaintiff has an agent to collect. The performance of the plaintiff's implied promise is then governed by the law of New York. See Restatement, Conflict of Laws (1934) § 358; Goodrich, Conflict of Laws (1938) § 111. That law with reference to such a contract as this, if not shown to differ from the law governing contracts arising in New York, limits liability on "implied privity" solely to freight where the charter-party has not been incorporated into the bills, Dayton v. Parke, 142 N.Y. 391, 37 N.E. 642; the theory is that the consignee is not a party to the original contract and so is not bound to accept the cargo at any particular time, and, therefore, incurs no responsibility for delay according to the terms of the contract. Conkling v. Brooklyn Lumber Co., 10 App.Div. 404, 41 N.Y.S. 801; Washburn v. Empire Brick & Supply Co., 152 App. Div. 563, 137 N.Y.S. 489; Erie R. Co. v. Waite, Sup., 62 Misc. 372, 114 N.Y.S. 1115. However, the consignee may be liable for damages in the nature of demurrage for unreasonable and improper detention in the *unloading* of the vessel. Dayton v. Parke, supra, 37 N.E. at page 645; Conklin v. Brooklyn Lumber Co., supra. But the

amount of these damages must be shown. Dayton v. Parke, supra. This issue of fact will be open for decision on the remand. See Federal Rules of Civil Procedure, Rule 56(d), 28 U.S.C.A. following section 723c.

As against the defendant Park Bridge the plaintiff asserts a cause of action based on a theory similar to the three-fold first theory above discussed and held insufficient, and further asserts that it had a lien on the proceeds of the sale of the bananas which constituted a trust res which can be followed into the hands of Park Bridge. However, even if there were a trust, there is no allegation or showing that Park Bridge took part of the specific proceeds or that it took the money with notice of the trust, without which there is no liability. See 2 Scott, Trusts (1939) § 304.1. In any event even if in subsequent proceedings the plaintiff shall prevail against Smith, it will be enforcing only a personal liability. The plaintiff relinquished its carrier's lien when it parted with the goods, Carver, op. cit. supra at § 677, and nothing thereafter occurred to create a new lien. The order as to Park Bridge is affirmed.

Affirmed in part and otherwise reversed and remanded for further proceedings in accordance with this opinion.

CLARK, Circuit Judge (dissenting).

Where liability asserted against several defendants is so far intertwined that decision as to each must turn in substantial part upon the same question of fact or law, judgments for some of them only are not final and appealable. This is the quite well-settled law; there are no precedents to the contrary so far as I can discover. The principle is sometimes expressed as applicable to defendants *jointly* liable; but the word jointly is, of course, not used in the strictest sense of the more ancient common law where a concert of interest was looked for, since the more usual application of the principle has been to cases of defendants liable concurrently or successively for negligence. Hunteman v. New Orleans Public Service, Inc., 5 Cir., 119 F.2d 465, certiorari denied 314 U.S. 647, 62 S.Ct. 89, 86 L.Ed. 519; Atwater v. North American Coal Corp., 2 Cir., 111 F.2d 125; Goldstein v. Groesbeck, 2 Cir., 142 F.2d 422, 425, 154 A.L.R. 1285, certiorari denied 323 U.S. 737, 65 S.Ct. 36; Studer v. Moore, 2 Cir., 153 F.2d 902; Reliable Transfer Co. v. Blanchard, 5 Cir.,

145 F.2d 551; Kuhn v. Canteen Food Service, Inc., 7 Cir., 150 F.2d 55. This case is more clearly within the rule than some of those cited; for here the liability of the two appealing defendants depends on the main liability of the original charterer which has not yet been determined. Oneida Nav. Corp. v. W. & S. Job & Co., 252 U.S. 521, 40 S.Ct. 357, 64 L.Ed. 697; Hohorst v. Hamburg-American Packet Co., 148 U.S. 262, 13 S.Ct. 590, 37 L.Ed. 443. Plaintiff's claim of judgment "against the defendants jointly or in the alternative" obviously means only that it desires judgment against such of the defendants (beginning necessarily with the charterer) as it can hold legally. That is, this is not even a case of true alternatives (which would still seem within the principle); it is a case of successive liability or liability over, as in the Oneida and Hohorst cases.

The case of Reeves v. Beardall, 316 U.S. 283, 286, 62 S.Ct. 1085, 1087, 86 L.Ed. 1478, dealt with a different question, the appealability of separate claims or causes of action, not the appealability of orders against some, but not all, of the codefendants. The Court, however, recognized the principle, saying: "Hence no question is presented here as respects the appealability of a judgment dismissing a complaint as to one of several defendants alleged to be jointly liable on the same claim. See Hunteman v. New Orleans Public Service, Inc., 5 Cir., 119 F.2d 465." The Court has recently reiterated the long-standing federal policy "against piecemeal litigation" and separate appeals in Catlin v. United States, 324 U.S. 229, 233, 234, 65 S.Ct. 631. See also United States v. Florian, 312 U.S. 656, 61 S.Ct. 713, 85 L.Ed. 1105, and Studer v. Moore, supra. The various points made in the opinion here would of course be open to the parties below at any time up to final judgment. Western States Machine Co. v. S. S. Hepworth Co., 2 Cir., 152 F.2d 79. The appeals should be dismissed.

I must add that I find great difficulty in working out the test of separability implied in the opinion. Suggestions that the principle is restricted to cases of liability alleged to result "from the same set of facts constituting a single tortious act," or to be "dependent upon or interrelated with the liability of each other defendant," or "predicated upon separate facts and separate theories, even though they all grow out of a single business venture," or enforceable in "separate" actions

with separate judgments, are surely shown to be quite insufficient by the very authorities cited. For those apply the principle to tort-feasors separately suable for concurrent and, of course, different tortious acts, and to principal and agent or indemnitor and indemnitee, not only separately suable, but where liability of each depends on separate facts and separate theories—with, of course, some overlapping of the evidence to present the problem. And that is just the case here. While it is said that the liability of the present appellees depends not upon the liability of the charterer, but upon "the legal effect of their own later acts and undertakings," this is quite clearly an incomplete analysis. Their liability in the first instance depends on whether there is any freight due under the charter, and, if so, how much; until that is established, there is no possibility of any liability against either appellee here. Hence for present purposes, the case exactly parallels that of indemnitor and indemnitee. Oneida Nav. Corp. v. W. & S. Job & Co., supra. Consider also a case such as Bank of Rondout v. Smith, 156 U.S. 330, 15 S.Ct. 358, 39 L.Ed. 441, an equity bill against certain partners *and* the purchasers at execution sales on judgments against the partners, or as Moss v. Kansas City Life Ins. Co., 8 Cir., 96 F.2d 108, an action for receivership and accounting against an insolvent insurance company *and* others, including a state insurance official, accused of trying to ruin it. The last case also shows that the principle obtains even though the question still at issue is narrow and its answer is indicated. Here we may guess that a trial will quickly show freight charges to be due, but nevertheless we are only guessing. And though the mere fact that other questions involving the liability of the present appellees may seem presently more difficult and interesting, yet the question of liability of the charterer for freight charges remains the primary one upon which all else depends.

Hence we are now upsetting a rule supported by strong public policy and by a particularly long history.[1] There is no need for this step, since the rights of the parties are abundantly preserved by trial below, followed by a single complete appeal. There seems to be some thought of sympathy for the appellant, who has gone to the expense of printing a record and brief before the question came before us. But up to now, it was acting against the many precedents. With this unsettling of the law, I fear we are inviting piecemeal appeals and making the enforcement of the federal policy difficult and aleatory.

---

[1] In addition to cases cited above, see Hewitt v. Charles R. McCormick Lumber Co. of Delaware, 2 Cir., 22 F.2d 925; Bush v. Leach, 2 Cir., 22 F.2d 296; Menge v. Warriner, 5 Cir., 120 F. 816; United States v. Girault, 11 How. 22, 31, 52 U.S. 22, 31, 13 L.Ed. 587. The Curtis and Williams cases cited in the opinion were quite different; the former concerned separate acts of mismanagement of bank directors over differing periods of years; the latter dealt with trustees' allowances for management of a railroad for some five years during foreclosure upon, and sale of, the railroad property.