### TWEEDIE TRADING CO. v. STRONG & TROWBRIDGE CO.

(Circuit Court of Appeals, Second Circuit.   March 11, 1912.)

#### No. 171.

**1. SHIPPING (§ 171*)—DEMURRAGE—BILL OF LADING CONSTRUED.**

Under a bill of lading for the cargo of a vessel, providing that the goods should be received by consignee "immediately the vessel is ready to discharge and continuously at all such hours as the custom house or port authorities may give permission for the ship to work," the shipper was liable for any delay in discharging, due to its failure to receive cargo from whatever cause, except fault of the shipowner.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 568; Dec. Dig. § 171.*]

**2. SHIPPING (§ 183\*)—DEMURRAGE—COMPUTATION OF AMOUNT.**

Where there was delay in discharging a cargo, for which the shipper was liable, but no rate of demurrage was fixed by the bill of lading, the amount may fairly be computed by dividing the gross freight earned on the voyage by the number of days it should have taken, and multiplying the quotient by the number of days she was delayed, making proper additions or deductions for any difference in her expenses during the time of such delay.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 593; Dec. Dig. § 183.\*

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Tweedie Trading Company against the Strong & Trowbridge Company. Decree for libelant (157 Fed. 304), from which it appeals. Reversed.

Ralph J. M. Bullowa and F. M. Brown, for appellant.

Edward G. Benedict (Everett, Clarke & Benedict, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. [1] The respondents in this case shipped the entire cargo of the steamer Myrtledene, of which the libelant was charterer, at Sparrows Point, Md., to be delivered at Takao and Keelung, Formosa, for certain named freight. The bill of lading provided:

"VI. Also that the goods are to be received by the consignee immediately the vessel is ready to discharge and continuously at all such hours as the custom house or port authorities may give permission for the ship to work or if necessary to discharge into lighters at the risk and expense of the consignees."

This is an express covenant, though it does not define the amount payable in case of default. The situation is not to be treated as if nothing had been said on the subject of the time in which the cargo was to be received. In such a case the consignees would have been only under an implied obligation to receive it in a reasonable time, and would therefore have been responsible only for their own delays. But this covenant containing no exceptions in favor of the consignees requires that they take the cargo as soon as the vessel is ready to discharge and with the continuous discharge usual at the ports of Takao and Keelung. They are not to be relieved of this obligation because of the lack of lighters, even if resulting from acts of the Japanese government. For any breach of this covenant because of delay in receiving cargo, the respondents, as shippers and parties to the bills of lading, are liable. The commissioner and District Court have found that there was a delay of 18 days, which finding we adopt.

[2] The question is: What compensation is the libelant entitled to receive therefor? There being no sum fixed for demurrage, the respondents must pay damages in the nature of demurrage. The court below arrived at the amount by ascertaining the net profits of the voy-

---
\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

age to the charterer, dividing that sum by the number of days the voyage would have occupied if there had been no delay, and then multiplying the 18 days of delay by the dividend, making in all $588.96. We do not think this method fair to the libelant. It allows nothing for expenses necessarily incurred during the period of detention.

It is to be noted that the claim arises out of contract, that the regular expenses of the libelant continued throughout the period of delay, and that the damages are to be calculated at the end of the voyage, when the actual number of days needed and the number of days the voyage was unnecessarily prolonged are known.

Sometimes the market value of a vessel is adopted as the measure of the damages; but there is no evidence of any market value at Takao or Keelung. Sometimes the loss of a definite engagement for the vessel is allowed, of which there is no evidence in this case. Sometimes, in the absence of all other evidence, the charter rate of demurrage is adopted. In this case we think the fairest measure is to treat the damages as extended freight, and to give the libelant for the period of delay the same amount per diem as the respondents agreed to pay for the voyage. This represents the value of the use of the vessel to the libelant at the time. If during the period of detention the libelant had saved anything, for instance, coal, such an amount should be deducted; but the evidence is to the contrary. The steamer, lying in an open roadstead subject to monsoons, kept up steam on her main boilers night and day. On the other hand, if the libelant had incurred an additional expense or loss, of which there is no evidence, that ought to be added.

In this case compensation is to be ascertained by dividing the gross freight paid by the respondents, $21,039.94, by the number of days the voyage should have taken, viz., 114, multiplying the 18 demurrage days by the dividend, $184.56, and from the product, $3,322.08, deducting the sum of £212 received on account, and not in settlement, from the consignees at Formosa. The decree is reversed, and the court below directed to enter a decree in favor of the libelant in accordance with this opinion, with interest and costs of both courts.