INTERLAKE S. S. CO. v. 251,000 BUSHELS OF NO. 2 MIXED CORN ex Cargo of James H. Hoyt.

(District Court, E. D. Michigan, S. D. April 2, 1927.)

No. 6632.

1. Shipping ⟨key⟩183—Measure of recovery of demurrage for delay of cargo owner in unloading determined.

Where there was unreasonable delay by a cargo owner in unloading, the ship is entitled to recover as demurrage her average daily gross earnings for the time of detention, allowing for decrease or increase of expenses during that time.

2. Shipping ⟨key⟩183—Interest on demurrage held recoverable by ship.

Ship held entitled to interest on sum allowed for demurrage.

In Admiralty. Suit by the Interlake Steamship Company against 251,000 bushels of No. 2 mixed corn out of the cargo of the steamer James H. Hoyt. On exceptions to report of commissioner fixing amount of libelant's damages. Exceptions sustained.

Kelley, David & Cottrell, of Cleveland, Ohio, for libelant.

Miller, Canfield, Paddock & Stone, of Detroit, Mich., for respondent.

TUTTLE, District Judge. It has already been held by interlocutory decree herein that the steamer James H. Hoyt was unreasonably delayed in the unloading of her cargo for a period of 5¼ days, and reference was made to the special commissioner to determine the amount of the damages sustained by such delay. (299 F. 666.)

The special commissioner has taken proofs on this question, and, from the evidence, finds that the sum of $188.32 represents the usual, reasonable, average daily net earnings of said steamer James H. Hoyt. This average daily net earnings was mutiplied by 5¼, the number of days representing the delay, and by this reasoning and computation the commissioner has allowed to the libelant the sum of $988.58. Nothing additional has been allowed, either for the necessary expenses of the steamer during the time of delay or for interest.

The cause is now before the court upon exceptions filed by the libelant. Libelant excepts to the method of computing damage and also excepts to the failure to allow interest.

[1] 1. The method of computing damages is clearly unfair to libelant. It is the duty of the court to reimburse the libelant for the damages actually sustained as a direct result of the unreasonable delay in unloading. It is well known, and the evidence in this case discloses, that on a brief delay of 5¼ days the steamer could not dispense with all the expenses. The expense of the captain and the crew would continue at the same amount as if the ship had not been delayed. The same is true of the insurance. The amount of fuel consumed was decreased, but was considerable in amount. The steamer was making an average daily net earnings of $188.32. The steamer was entitled to continue to make that net earning during the time it was unreasonably delayed. If the libelant is allowed only this average net earnings and out of this amount is compelled to pay all of the expenses incurred during the delay, then libelant has not been fully reimbursed for damages, but is still a loser to the amount of the expenses incurred during the delay. It is true that some of the decisions seem to suggest this manner of computing damages, but a careful study of these cases leads to the conclusion that nearly all that has been said to this effect has been dictum. This method of computing damages would be so unjust that this court is unwilling to follow that rule. The Gov. Ames, 187 F. 40 (C. C. A. 1); Tweedie Trading Co. v. Strong & Trowbridge Co., 195 F. 929 (C. C. A. 2).

It seems unfortunate that the courts should ever have undertaken to formulate a rule based upon net earnings in such a case as is here presented. This makes the problem unnecessarily difficult and confusing. A simpler method to pursue would be to determine the average daily gross earnings of the ship, and then to also determine the amount to which the average daily expenses of the ship had been increased or descreased as a result of the unreasonable delay. In some cases it might be reasonably the duty of the steamer to dispense with some of the crew, if the delay were for a long period. The expense for coal, as in the present case, very probably would be reduced. On the other hand, there might be necessarily incurred some additional expense for dockage or things of that kind. It would be the duty of the ship to exercise reasonable prudence in making the expense as small as possible. Having determined the average daily increase or decrease in the necessary expenses of the ship during the period of the delay, then the average gross income of the ship would be increased or decreased in the exact amount that the expenses had been increased or decreased, and the amount so obtained would be the amount to be allowed to the libelant for each day of the unreasonable delay. This

method of computing the damages is simple and easy, and it relieves the problem of many things which otherwise would be confusing. If we attempt at the outset to figure out the average daily net income, then, of necessity, we find many items demanding our attention. In this case every one agrees that the steamer could not in reason have discharged the captain and crew because of the 5¼ days' delay. Every one agreed that the steamer could not cancel its insurance. This being true, then there is no good reason why any time should be spent to determine the amount of this expense, which would be necessary in order to determine the average daily net profit. There is no reason why we should spend time with any item, unless it had been changed because of the unreasonable delay. It is a comparatively simple problem to determine the average daily gross income of the steamer. If all of the expenses of the steamer had been necessarily just the same during the delay as while in operation, then the libelant should recover for this period its full average daily gross income. It will be comparatively simple to determine the few items of expense which were changed because of the delay. In this case there were no increased expenses because of the delay, and the only decrease in expenses was that resulting from a less amount of fuel used. Therefore the average daily gross income, multiplied by 5¼, the number of days of the unreasonable delay, less the decrease in the expense for fuel, will represent the amount of the damages which libelant is entitled to recover herein.

[2] 2. Interest is not allowable as a matter of right in admiralty cases, but is within the sound discretion of the court, and, if allowed, is, like the other allowances, in the nature of damages caused to the libelant. This court has already found that the libelant was damaged. The amount was not liquidated until this time. Nevertheless it is, in the opinion of this court, a legitimate item and element of damages which should be allowed to the libelant. The libelant was damaged. If the libelant had been paid, at the time of the damage, the amount of the damage now found, the damage would not have been as great as it is because of the delay in receiving the amount due. It is the opinion of this court that justice demands that interest at 5 per cent. be allowed to the libelant from October 7, 1921, the date of the end of the detention, to the date of the final decree. The Elvaston, 279 F. 935 (C. C. A. 5); Diamond Coal & Coke Co. v. Iron City Sand Co., 297 F. 246 (C. C. A. 3).

A decree will be entered in accordance with the terms of this opinion. If the parties are unable to agree upon the details of such decree, the libelant may prepare and present a proposed draft thereof, on due notice to opposing counsel.