## GOLDSTEIN v. GROESBECK et al.
### No. 264.

Circuit Court of Appeals, Second Circuit.

April 7, 1944.

Abraham L. Pomerantz, of New York City (William Rosenfeld and Milton Paul-

son, both of New York City, on the brief), for appellant.

Louis Connick, of New York City (Simpson, Thacher & Bartlett, Robert H. O'Brien, Benjamin C. Milner, III, and Richard Hawkins, all of New York City, on the brief), for appellees C. E. Groesbeck and others.

Ralph M. McDermid, of New York City (Reid & Priest and James L. Boone, all of New York City, on the brief), for appellee American Power & Light Co.

Ralph M. McDermid, of New York City (Reid & Priest and James L. Boone, all of New York City, and Armstrong, Kramer, Morrison, Roche & Duffy, of Phoenix, Ariz., Loftin, Anderson, Scott, McCarthy & Preston, of Miami, Fla., Caldwell, Downing, Noble & Garrity, of Kansas City, Mo., and Gillette, Nye, Harries & Montague, of Duluth, Minn., on the brief), for appellees Central Arizona Light & Power Co., Florida Power & Light Co., Kansas Gas & Electric Co., and Minnesota Power Co.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Defendant Electric Bond & Share Company, hereinafter called EBS, is a New York corporation which is the top holding company of a large nationwide public utilities system. Among other things it owns the controlling interest in and dominates defendant American Power & Light Company, an intermediate holding company incorporated in Maine, which controls and dominates, in turn, the four defendant operating companies, Central Arizona Light & Power Company, an Arizona corporation, Florida Power & Light Company, a Florida corporation, Kansas Gas & Electric Company, a West Virginia corporation, and Minnesota Power Company, a Minnesota corporation. Plaintiff, a citizen of Massachusetts and minority shareholder of American, brings this action on behalf of American's four operating companies to compel defendants, EBS, Ebasco Services, Inc., a New York corporation, and certain officers and directors of the latter companies, to account for profits received by Ebasco under service and construction contracts made with the operating companies in violation of § 4(a) (2) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79d(a) (2). This section made it unlawful, after December 1, 1935, for any "holding company" not registered under the Act "directly or indirectly * * * by use of the mails or any means or instrumentality of interstate commerce, to negotiate, enter into, or take any step in the performance of, any service, sales, or construction contract undertaking to perform services or construction work for, or sell goods to, any public-utility company or holding company."

The circumstances surrounding the contracts involved in this appeal date back to 1935, when officials of EBS, faced with the terms of the new Act, decided to contest its constitutionality and to ignore its provisions by omitting to register thereunder. Nevertheless, as a hedge against a possible declaration of constitutionality by the Supreme Court, they caused the organization of Ebasco and of Phoenix Construction Company, another New York corporation later merged into Ebasco, for the express purpose of taking over EBS's service and construction contracts with its various operating companies. The contracts which are now before us resulted from these transactions, the object of which, of course, was to escape the mandate of § 4(a) (2) of the Act on the ground that Ebasco and Phoenix were not "holding companies," but merely servicing companies. The operating companies made payments to Ebasco under these contracts from 1935 until April, 1938, when EBS finally registered under the Act, after the decision in Electric Bond & Share Co. v. S. E. C., 303 U.S. 419, 58 S. Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105, upholding the constitutionality of the Act. It is these payments which plaintiff seeks to recover for the corporations making the payments.

In the District Court the operating companies and certain of the individual defendants moved for dismissal on the ground that, as to them, the venue of the action was not properly laid in the Southern District of New York. These motions the court granted as to all but two individual defendants, in an opinion which rested basically on the premise that a "double derivative" shareholder's action, i. e., one where the plaintiff was not a shareholder of the injured corporation, but only of a shareholder which had itself refused to sue, was not recognized in the federal courts or in the controlling venue statutes. 42 F. Supp. 419. The remaining defendants thereupon moved to dismiss the complaint in that (1) it failed to state a cause of action; (2) there was no jurisdiction in the

District Court, because the Act vests primary or exclusive jurisdiction in the Securities and Exchange Commission; and (3) indispensable parties, the operating companies, were no longer before the court. These motions were also granted as to all defendants in two judgments entered at the same time below, but solely on the ground that the operating companies were indispensable parties who were no longer before the court. Plaintiff appeals from these judgments and also assigns error in the earlier order dismissing certain of the defendants.[1] Hence there are two distinct problems before us: first, whether double derivative suits can be maintained in the federal courts and whether the venue below was correct; and second, but only if we decide the first issues in plaintiff's favor, the further question of the sufficiency of the complaint, which was not passed upon by the District Court. Only four of American's sixteen subsidiaries originally named as defendants were served with process. Companion cases which by stipulation of the parties await the outcome of this appeal concern other intermediate holding companies and their operating subsidiaries, so that, as it appears, substantially all the companies in the Bond and Share System are involved directly or indirectly in this litigation.

■■ Initially, we think it clear that a stockholder can maintain a double derivative action in the federal courts. We so held in United States Lines v. United States Lines Co., 2 Cir., 96 F.2d 148, 151, where we stated, "The justification for allowing a double derivative suit like the present to be maintained is that both the original corporation that is said to have suffered wrong and its shareholder corporation which had the right to bring a derivative suit were in the control of those charged with inflicting the corporate injury." See also Birch v. McColgan, D.C.S.D.Cal., 39 F.Supp. 358, 366; Piccard v. Sperry Corp., D.C.S.D.N.Y., 30 F.Supp. 171; and Wachsman v. Tobacco Products Corp. of New Jersey, D.C.N.J., 42 F.Supp. 174, 177, affirmed 3 Cir., 129 F.2d 815, 816; and compare Missouri-Kansas Pipe Line Co. v. United States, 312 U.S. 502, 508, 61 S.Ct. 666, 85 L.Ed. 975. Such appears also to be the general view, Holmes v. Camp, 180 App.Div. 409, 167 N.Y.S. 840; Carter v. Producers' & Refin-

ers' Oil Co., 164 Pa. 463, 30 A. 391; Glenn, The Stockholder's Suit, 33 Yale L.J. 580, 586; 50 Harv.L.Rev. 963, and to be quite within the spirit of equity. A shareholder's suit in essence is nothing more than a suit by a beneficiary of a fiduciary to enforce a right running to the fiduciary as such; a double derivative suit is one in which the beneficiary is in his turn a fiduciary, and as such refuses to enforce the right which is his as beneficiary of the first fiduciary. And there is nothing in Federal Rule 23(b), 28 U.S.C.A. following section 723c, to change the law of the United States Lines case. As we have just had occasion to point out in Galdi v. Jones, 2 Cir., 141 F.2d 984, Federal Rule 23(b) is only a scrupulous re-enactment of the old equity rule established in Hawes v. City of Oakland, 104 U.S. 450, 26 L.Ed. 827—originally Equity Rule 94, later Equity Rule 27, 28 U.S.C.A. § 723 appendix. This is, therefore, an action to enforce a shareholder's "secondary right" brought by one entitled under the prevailing rules of equity to bring it under the circumstances disclosed.

■ Granted the right to sue, therefore, we think that venue in the Southern District of New York was proper. The Utility Act has its own provisions for venue which apparently are designed to be all-inclusive in actions involving it and which plaintiff satisfies. Section 25, 15 U.S.C.A. § 79y, provides that "any suit or action to enforce any liability or duty created by" the Act may be brought "in the district wherein any act or transaction constituting the violation occurred" or "in the district wherein the defendant is an inhabitant or transacts business." The present action is surely to enforce a duty created by the Act, since but for the Act the payments under the service and construction contracts would be innocuous enough; and the words "any liability or duty" are clearly broad enough to include any breaches of duty causing injury or loss to private persons. See Baird v. Franklin, 2 Cir., 141 F.2d 238. Enough appears in the record to show for present purposes at least that some of the violations complained of occurred within the district. Defendants' objection that plaintiff's affidavits alleging occurrence of some of the violations within the district were hearsay, and hence inadmissible, is not completely true, in any event, but seems

---

[1] An appeal from this earlier order was dismissed by this court as not final, July 3, 1942; cf. Hohorst v. Hamburg-American Packet Co., 148 U.S. 262, 13 S.Ct. 590, 37 L.Ed. 443; Atwater v. North American Coal Corp., 2 Cir., 111 F.2d 125.

unimportant, for the hearsay consists of references to standard and well known sources, borne out in fact in matter recently before us in the record in Electric Bond & Share Co. v. S. E. C., 2 Cir., 92 F.2d 580, affirmed 303 U.S. 419, 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105;[2] and defendants have tendered no issue on the matter. Further, we do not see why the ordinary rule that improper venue is a matter of defense does not apply; the mere fact that the requirement is contained in a statute also granting jurisdiction does not change its essential nature as defining merely the district of trial. Clearly a peremptory motion to dismiss should not be granted; we do not need to pass upon the further question whether the defendants referred to in this provision of Sec. 25 are not the actual, rather than the nominal, defendants, i. e., EBS and Ebasco, both of whom are admittedly located within the district.

■ The parties and the District Court also considered the applicability of the general venue statute, Jud.Code, § 51, 28 U.S. C.A. § 112, in the light of the amendment of 1936—considered in Greenberg v. Giannini, 2 Cir., 140 F.2d 550—authorizing a shareholder's derivative suit in any district in which the corporation itself might have sued. The District Court held this inapplicable, as referring only to the corporation in which the plaintiff was a shareholder, i. e., as not including the double derivative suit. While we have held the provisions of the Utility Act itself, § 25, more immediately applicable, we think, for reasons we have already discussed, that the District Court erred in holding the present type of suit not a derivative action on behalf of a corporation within the statute.[3]

■ Turning now to the allegations of the complaint, we think it sufficient to state a claim or claims for relief in the right of the operating companies. As we have seen, the Act makes it unlawful for unregistered holding companies to enter "directly or indirectly" into service or construction contracts. Although the subsidiary, Ebasco, not the holding company, EBS, was involved in the present contracts, a reasonable construction of the Act, especially in view of § 27(a), 15 U.S.C.A. § 79z—1(a), stating that it shall be equally unlawful for any person to do anything through another person which he could not do himself, would require that such subsidiaries, when organized for the express purpose of contravening the Act, be held in the place of the holding company itself. See Weinberger v. Semenenko, Sup., 36 N.Y.S.2d 396. And Ebasco was organized here for this purpose. Electric Bond & Share Co. v. S. E. C., supra, 303 U.S. at page 432, 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105.

■ Violation being thus established, § 26(b), 15 U.S.C.A. § 79z(b), in express terms declares the contracts void. It should follow that the operating companies are entitled to a refund, for no other result can fulfill the expressed purpose of the Act of protecting subsidiaries from the over-reachings of holding companies. Thus, the statutory declaration of the necessity for control of holding companies in § 1(b) (2), 15 U.S.C.A. § 79a(b), (2), states, inter alia, that the national public interest is adversely affected "when subsidiary public-utility companies are subjected to excessive charges for services." The three specific sanctions stated in the Act—injunction, § 18(f), 15 U.S.C.A. § 79r(f); criminal punishment, § 29, 15 U.S.C.A. § 79z—3; and the negative relief of § 26(b), declaring the contracts void—do not in terms place the defrauded operating company in statu quo; and § 26 is incomplete, if not ineffective, unless it is considered to authorize

[2] National Fire Ins. Co. of Hartford v. Thompson, 281 U.S. 331, 50 S.Ct. 288, 74 L.Ed. 881; Freshman v. Atkins, 269 U. S. 121, 46 S.Ct. 41, 70 L.Ed. 193; cf. Nahtel Corp. v. West Virginia Pulp & Paper Co., 2 Cir., 141 F.2d 1.

[3] This is borne out by the Report of the House Judiciary Committee, H. R. Rep. No. 2257, 74th Cong., 2d Sess., to the effect that the amendment was designed to change the denial of access of a plaintiff to the federal court shown in such a decision as Busch v. Mary A. Riddle Co., D.C.Del., 283 F. 443, where the plaintiff could not sue double derivatively for lack of indispensable parties. Defendants also contend that the amendment which adds an exception at the end of the statute is, therefore, limited to the immediately preceding clause dealing with cases where jurisdiction is founded only on diversity of citizenship, and cannot apply where, as here, jurisdiction depends in part at least on a federal statute. But the legislative history, the general sense of the provision, and its grammatical construction (indicating its equality with the other major substantive provisions of the statute, each now separated from the rest by a semi-colon)—all point to a broader and more general meaning of the amendment.

recovery by the operating companies. The rule of damages—whether return of the full consideration, as plaintiff claims, or only the difference between the consideration and the value of the services received—need not be settled now in advance of answer and of trial on the merits. A useful analogy in favor of this interpretation can be found in § 29 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78cc, which is virtually identical with § 26 of the Utility Act, for it is now clear from the 1938 amendment to § 29, 52 Stat. 1076, that Congress intended a right of recovery thereunder. Geismar v. Bond & Goodwin, Inc., D.C.S.D.N.Y., 40 F.Supp. 876. Nor are the operating companies estopped as being in pari delicto. In truth, they were so dominated by EBS that they cannot be considered in pari delicto at all, Thomas v. City of Richmond, 12 Wall. 349, 79 U.S. 349, 355, 20 L.Ed. 453; 6 Williston on Contracts, Rev.Ed. 1938, § 1789; but even had they been, the policy of the law would still favor recovery under these circumstances. Irwin v. Curie, 171 N.Y. 409, 413, 414, 64 N.E. 161, 58 L.R.A. 830; 2 Pomeroy, Equity Jurisprudence, 4th Ed., § 941.

Defendants object that § 4(a) (2) cannot be enforced by a private party because its proscription of service contracts is made as a penalty for the failure of the holding company to register under § 5 of the Act, 15 U.S.C.A. § 79e. Electric Bond & Share Co. v. S. E. C., supra. Since some penalties can be enforced by private parties, the label is in any event inconclusive. Life & Casualty Ins. Co. of Tennessee v. McCray, 291 U.S. 566, 574, 54 S.Ct. 482, 78 L.Ed. 987, and cases cited therein. If private parties were to be held precluded from thus relying upon the Act, on the theory that its terms constituted a penalty, it would seem to follow that the private operating companies must pay the amounts due under the contracts, even though they were declared illegal—a result hardly consonant with the policy of the legislation. Furthermore, the analogy of the Securities Exchange Act is again useful. Private enforcement of § 29(b) of that statute has been permitted, Geismar v. Bond & Goodwin, Inc., supra, while we have recently upheld broadly the private rights of action impliedly granted by the Securities Exchange Act, Baird v. Franklin, 2 Cir., 141 F.2d 238; and cf. Charles Hughes & Co. v. S. E. C., 2 Cir., 139 F.2d 434, certiorari de-

nied 64 S.Ct. 781. As we have pointed out in those cases, we think a denial of a private right of action to those for whose ultimate protection the legislation is intended leaves legislation highly publicized as in the public interest in fact sadly wanting, and even delusive, to that end. Nor does recovery, even though labelled a penalty, run foul of the rule of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764, which holds invalid any penalty so harsh as to forestall the possibility of a test of constitutionality. There can be no answer to the pragmatic test that the Act was in fact unsuccessfully attacked in Electric Bond & Share Co. v. S. E. C., supra.

Defendants' final objections center about a claim of substantially exclusive jurisdiction in the Securities and Exchange Commission. First, it is alleged that certain agreements among the Commission, the Attorney General, the Postmaster General, and EBS, made before the decision in Electric Bond & Share Co. v. S. E. C., supra, to the effect that no civil or criminal proceedings would be brought on account of any violation of the Act committed prior to the date of an adjudication of constitutionality, constitute a bar to the present action. But these agreements were simply that no governmental action would be taken against EBS, and did not, as well as could not, cover the eventuality of private suit. When defendants decided to ignore this legislation as unconstitutional, they surely took the risk of answering over to their own stockholders as to the propriety of their actions. The claim is then made that the Commission has exclusive, or at least primary, jurisdiction in the premises to such an extent at least as to forestall this action in the District Court. Texas & P. R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075; United States Navigation Co. v. Cunard S. S. Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408. Such a theory, however, is inapplicable to the situation here. The doctrine of primary jurisdiction admittedly bars access to the courts in certain cases until a complete and efficient administrative remedy provided by statute has been exhausted, but the Act here provides no such remedy. See Dederick v. North American Co., D.C.S.D.N.Y., 48 F.Supp. 410.

Reversed and remanded for further proceedings in accordance with this opinion.