**REMAR v. CLAYTON SECURITIES CORPORATION et al.**

Civil Action No. 7496.

United States District Court
D. Massachusetts.

Jan. 7, 1949.

Harry B. Zonis, Paul T. Smith, and Manuel Katz, all of Boston, Mass, for plaintiff.

Nutter, McClennen & Fish and Robert W. Meserve, both of Boston, Mass., for defendant Clayton Securities Corporation.

WYZANSKI, District Judge.

This is a motion by Clayton Securities Corporation that the complaint against it be dismissed.

According to the complaint, plaintiff, a Massachusetts citizen, was a customer of defendant Clayton, a Massachusetts corporation. Clayton was a broker or dealer who transacts a business in securities [seemingly through the medium of a national securities exchange].

June 11, 1946, plaintiff owned 100 shares of National Skyway Freight, 25 Textron Incorporated warrants and 100 shares of Hytron Radio and Electronic Co. having an aggregate market value of $2,250. It does not appear whether these securities were registered on a national securities exchange but I assume they were.

Clayton advised plaintiff to purchase other securities. To accomplish that end plaintiff paid Clayton $1,028.84, and Clayton arranged for plaintiff to borrow $5,000 from the Montpelier National Bank upon the basis of plaintiff's promissory note secured by the securities just named and, it seems, by 50 shares of Federated Department Stores which plaintiff bought through Clayton for $3,833.18 and 200 shares of R.K.O. warrants which plaintiff also bought through Clayton for $2,145.65. These last two securities were bought with the proceeds of the $5,000 loan. It does not appear but I assume that these securities were registered on a national securities exchange. All the transactions referred to in this paragraph occurred in June 1946.

December 9, 1946, at Clayton's instigation, plaintiff gave the bank an additional promissory note for $3,783.41. It does not appear whether additional security was given for this note. And it does not appear —although perhaps it may be inferred— that plaintiff transferred the proceeds of this note to Clayton.

Between September 1946 and July 31, 1947, the bank and, according to the complaint, Clayton sold all the securities that have been mentioned and, it seems, applied the proceeds to the two notes held by the bank. This left a deficiency of $1,707.72 due on the notes for which in a state court proceeding the bank is now suing plaintiff.

Plaintiff's contention is (1) that the two loans made by the bank were in violation of Regulations T and U promulgated by the Board of Governors of the Federal Reserve System under the authority conferred by § 7(a) of the Securities and Exchange Act, Act of June 6, 1934, c. 404, 48 Stat. 886 et seq., 15 U.S.C.A. § 78g(a); (2) that Clayton's activities in arranging for these loans violated § 7(c) of that Act as amended, 48 Stat. 887, 15 U.S.C.A. § 78g(c); (3) that plaintiff has been damaged by the loss of the $2,250 securities he originally owned and the $1,024.84 he paid out of his own

funds; and (4) that § 27 of the Securities and Exchange Act of June 6, 1934, c. 404, 48 Stat. 902, 15 U.S.C.A. § 78aa gives this Court jurisdiction over plaintiff's claim.

I. The first question is whether, if the facts are as alleged, Clayton violated the Securities and Exchange Act.

Section 7(a) and (b) of the Securities and Exchange Act, 48 Stat. 886, 887, 15 U.S.C.A. § 78g(a) and (b) gave to the Federal Reserve Board—now the Board of Governors of the Federal Reserve System, see § 203(a) of Act of August 23, 1935, c. 614, 49 Stat. 704—authority to prescribe rules and regulations with respect to the amount of credit that may be initially extended and subsequently maintained on any security registered on a national security exchange. Pursuant thereto, the Board issued and from time to time amended Regulation T affecting brokers, dealers and others, and Regulation U affecting banks.

■ If the facts are as alleged, the credit transactions between plaintiff and the Montpelier National Bank involved a violation by the bank of Regulation U as it stood in 1946 because the bank knowingly extended for the purchase of securities credit in an amount greater than was warranted by the regulation. But the difficult point is whether it was unlawful for Clayton to arrange that transaction. In coming to this point the approach must begin with § 7(c) and (d) of the statute, 15 U.S.C.A. § 78g(c) and (d). The former is directed at dealers and brokers; the latter at all others. In each case what is made unlawful is (1) to extend or maintain credit or (2) to arrange for the maintenance of credit—in contravention of the Federal Reserve rules. When, as in the case of Regulation U, a Federal Reserve regulation provides that "no bank" shall extend certain credits, and the regulation omits any prohibition against non-bankers arranging such bank credits, can anyone but a bank be held under § 7(c) or (d)? It seems to me that an affirmative answer is required. The language and intent of § 7(c) and (d) are to the effect that one who violates or causes the violation of a regulation is guilty. It would be absurd to interpret such a broad statute so that one who merely causes a violation is not guilty if the particular regulation in issue states merely that such-and-such classes of persons shall not extend credit, and the regulation fails to specify that no one shall arrange such a prohibited credit. Therefore, if there were only Regulation U and no Regulation T, I should reach the conclusion that § 7(c) applied to a dealer who arranged a bank loan which involved a violation by the bank of Regulation U.

Is the case altered because the Federal Reserve in issuing Regulation T provided in § 7(a) thereof that a broker could arrange for the extension of credit to a customer upon the same terms as those which the broker could extend credit, except that the limitation shall not apply with respect to the arranging by a broker for a bank, subject to Regulation U, to extend credit? In my opinion the case is not altered. Section 7(a) of Regulation T limits the impact of *that* regulation upon brokers who arrange bank credits. It does not purport to qualify, amend or limit Regulation U. And it has no bearing on the statutory duty imposed upon brokers by § 7(c) of the Securities and Exchange Act which requires them to refrain from arranging credits prohibited by Regulation U.

In summary, if a bank credit violates Regulation U, anyone who arranged the bank credit violated either § 7(c) or (d); and this defendant, being a broker, fell within § 7(c) rather than § 7(d). In view of this conclusion I need not consider whether Clayton also violated Regulation T. I., therefore, do not pass upon the contention that the exemption afforded by § 7(a) of Regulation T should be narrowly construed as being applicable only where the broker arranges for a credit (1) with a bank subject to Regulation U, and (2) on terms specified in Regulation U. The second of these conditions is not expressed in Regulation T, and I do not decide whether it is necessarily implied.

II. The second question is whether, if Clayton violated § 7(c) of the Securities and Exchange Act, 48 Stat. 887, 15 U.S. C.A. § 78g, the violation gives plaintiff as a private person a right of action to recover from defendant on account of injuries plaintiff sustained as a proximate consequence of Clayton's violation.

■ The Securities and Exchange Act does not expressly give a right or remedy to a private person injured by § 7(c) of that Act. But such a right may nonetheless be implied. Cf. Baird v. Franklin, 2 Cir., 141 F.2d 238; Goldstein v. Groesbeck, 2 Cir., 142 F.2d 422, 154 A.L.R. 1285; Downing v. Howard, 3 Cir., 162 F.2d 654, 658; Kardon v. National Gypsum Co., D.C.E.D.Pa., 69 F.Supp. 512, Id., D.C.E.D.Pa., 73 F.Supp. 798. See Note, 61 Harv.L.Rev. 858. The general principle regarding civil liability for violations of prohibitory statutes has been put with precision in Restatement, Torts, § 286. Broadly stated, the rule is that where defendant's violation of a prohibitory statute has caused injury to plaintiff the latter has a right of action if one of the purposes of the enactment was to protect individual interests like the plaintiff's.

■ That rule applies to the case at bar. Undoubtedly "the main purpose" of § 7 of the Securities and Exchange Act was "to give a government credit agency an effective method of reducing the aggregate amount of the nation's credit resources which can be directed by speculation into the stock market." House Com.Rep. 73rd Cong., 2nd Sess. No. 1383. But Congress recognized that "protection of the small speculator by making it impossible for him to spread himself too thin * * * will be achieved as a by-product of the main purpose." Ibid. In short, the intent of the enactment was in part to protect an individual like plaintiff from losing his equities in stocks pledged to a broker, dealer or bank, due to his having a lower margin than the level approved by the Federal Reserve Board.

■ Plaintiff's right of action is not affected by his participation as borrower in the transaction in which Clayton and the bank violated the statute. Since the statute was passed for the benefit of people like plaintiff, and since the Legislature regarded him as incapable of protecting himself, he is not disabled from suing for the injury he sustained. See Restatement, Torts, § 286 comment j; Osborne v. Salvation Army, 2 Cir., 107 F.2d 929, 931, 932. This principle may be compared with the rule that allows a plaintiff to enforce or rescind a contract made in violation of a statute if the violation was by defendant and the plaintiff belongs to the class for whose benefit the statute was enacted. Goldstein v. Groesbeck, 2 Cir., 142 F.2d 422, 427, 154 A.L.R. 1285; Irwin v. Curie, 171 N.Y. 409, 414, 64 N.E. 161, 58 L.R.A. 830; Kneeland v. Emerton, 280 Mass. 371, 378, 183 N.E. 155, 87 A.L.R. 1.

In holding that a private person may have a right of action under § 7(c), I have not considered and do not decide whether this plaintiff has suffered damages which are the proximate consequence of Clayton's violation. A decision on this point should abide the taking of testimony. Cf. Baird v. Franklin, supra. This is particularly appropriate because it may be that plaintiff's right is different with respect to the loss of money paid Clayton from its right with respect to the loss of securities delivered to the bank as collateral for loans claimed to be unlawful.

III. The third question is whether this Court has jurisdiction over this case.

■ Section 27 of the Securities and Exchange Act, 48 Stat. 902, 903, 15 U.S.C.A. § 78aa, gives this Court jurisdiction over "suits in equity and actions at law brought to enforce any liability or duty created by this Act." The issue is whether plaintiff's cause of action springs from the common law of tort, which merely takes as its standard of due care the Securities and Exchange Act, see Restatement, Torts, § 286, Baird v. Franklin, supra, 141 F.2d at page 245 col. 1, 7 lines from the bottom of the page and United States v. Silliman, 3 Cir., 167 F.2d 607, 611 note 11, or is brought to enforce a liability or duty directly created by the Securities and Exchange Act. After some hesitation, I have concluded that, within the meaning of § 27, plaintiff is enforcing a liability created by the Securities and Exchange Act. To be sure, the statute created the liability by implication, not by express words. But once the liability was created, its extent was to be measured by what is sometimes called a federal rather than a state common law. Cf. O'Brien v. Western Union Telegraph

Co., 1 Cir., 113 F.2d 539. See Clearfield Trust Co. v. United States, 318 U.S. 363, 366, 367, 63 S.Ct. 573, 87 L.Ed. 838. Suits to enforce a liability having such federal ancestry should be granted credentials of legitimacy in connection with this jurisdictional section of the statute. For this jurisdictional section was designed to give federal courts broad authority in connection with actions connected with the Securities and Exchange Act, so that they might be disposed of in a uniform, prompt and informed manner. Without giving these reasons, a conclusion favorable to federal jurisdiction has been reached in Baird v. Franklin, 2 Cir., 141 F.2d 238, 240 first paragraph; Goldstein v. Groesbeck, 2 Cir., 142 F.2d 422, 427, 154 A.L.R. 1285; and dissent by Clark, C. J. in Securities and Exchange Commission v. Long Island Lighting Co., 2 Cir., 148 F.2d 252, 264.

The motion to dismiss is denied

The motion for a more definite statement is allowed and plaintiff is ordered within 30 days to state precisely

(1) Whether Clayton dealt as broker or dealer with plaintiff,

(2) What shares plaintiff gave the bank as collateral,

(3) Whether those shares were registered on a national securities exchange, and

(4) What plaintiff did with the proceeds of the two notes.