Norman **HOWARD**, on behalf of himself and other Stockholders of Circle Wire & Cable Corporation, Plaintiff,

v.

Sol **FURST**, Max B. Cohn, Isadore J. Furst, Sol Cohn, Richard C. Noel, Mortimer Hays, F. Dewey Everett, Cerro de Pasco Corporation, and Circle Wire & Cable Corporation, Defendants.

United States District Court
S. D. New York.
March 31, 1956.

Lewis M. Dabney, Jr., New York City, for plaintiff.

Hays, Podell, Algase, Crum & Feuer, New York City, for defendants, Sol Furst and others, Mortimer Hays, Mortimer Feuer, Martin Mensch, New York City, of counsel.

Milbank, Tweed, Hope & Hadley, New York City, for defendant F. Dewey Everett, A. Donald MacKinnon, New York City, of counsel.

Alexander & Green, New York City, for defendant Cerro de Pasco Corp., Donald M. Dunn, William R. McDermott, J. Kenneth Campbell, New York City, of counsel.

WALSH, District Judge.

The defendants have moved to dismiss the action for lack of jurisdiction over the subject matter. Their motions are granted.

This is a derivative action brought by plaintiff in behalf of Circle Wire & Cable Corporation. The defendants are directors of Circle, the corporation itself, and the Cerro de Pasco Corporation. All of the parties are citizens of New York. The jurisdiction of this court is invoked under Section 27 of the Securities and Exchange Act of 1934, 15 U.S.C.A. § 77aa, on a claim that defendants solicited proxies in violation of Section 14(a) of that Act, 15 U.S.C.A. § 78n (a),[1] and Rule X–14A–9, 17 C.F.R. 240.14a–9.[2] The complaint is dismissed because the private action given by the Act is that of the individual stockholder not the corporation.

The complaint alleges that in order to secure stockholder approval for the sale of the corporation's assets to Cerro de Pasco, defendants solicited the votes of the stockholders by means of a proxy statement which was willfully and materially false and misleading in the following respects:

(1) It understated the cost and value of Circle's inventory by more than $8 million;

(2) As a result, it understated income for 1952, 1953, 1954 and the first nine months of 1955;

(3) It failed to disclose the private interest which directors Sol Furst, Max B. Cohn, Isadore J. Furst and Sol Cohn had in concealing their previous understatement of corporate taxable income.

Under state law, the sale required consent of two-thirds of Circle's shareholders.[3] A shareholders' meeting was scheduled for November 28, 1955 for this purpose. Five days prior thereto this action was commenced but no temporary injunction was sought. At the meeting the required number of shareholders

1. 15 U.S.C.A. § 78n(a):
"(a) It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of any national securities exchange or otherwise to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered on any national securities exchange in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

2. § 240.14a–9:
"False or misleading statements. No solicitation subject to §§ 240.14a–1 to 240.14a–10 shall be made by means of any proxy statement, form of proxy, notice of meeting, or other communication written or oral containing any statement which at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

3. N. Y. Stock Corporation Law, § 20, McK.Consol.Laws, c. 59.

gave consent to the sale and it was promptly consummated.

The relief sought was a permanent injunction against the voting of the proxies, which is now impossible to grant; an injunction to restrain Sol Furst, Max B. Cohn, Isadore J. Furst and Sol Cohn from voting as stockholders and the voiding of their votes if cast; the declaration that the contract of sale between Circle and Cerro de Pasco is void; the rescission of that sale if consummated; damages from the individual defendants and Cerro de Pasco, if restoration of the status quo is impossible. Notice to Cerro de Pasco of the misleading nature of the proxy statement is alleged upon the basis of Cerro's own inspection of the various properties of Circle; it is not claimed that it participated in the distribution of the offending proxy statement.

It is my conclusion that Section 14(a) does create a private right of action for the stockholders it was designed to protect.[4] Willful violation of the statute or rules promulgated under it is made criminal.[5] In the absence of contrary implications, a criminal statute enacted for the benefit of a specified class creates a civil cause of action in favor of the members of that class.[6] Such a right of action has been found under comparable language of Section 6(b), 15 U.S.C.A. § 78f(b) for failure of a stock exchange to discipline a member known to have indulged in conduct contrary to Exchange rules required under the statute;[7] for violations of Section 7(c) and (d), 15 U.S.C.A. § 78g(c, d) prohibiting the extension of credit beyond limits prescribed by the statute and the rules of the Board of Governors of the Federal Reserve System;[8] for violation of Section 11(d), 15 U.S.C.A. § 78k(d) prohibiting certain transactions by persons

4. One of the major purposes of the Securities and Exchange Act of 1934 was to protect investors in their status as shareholders as well as in their status as buyers and sellers of stock. The House Committee on Foreign and Interstate Commerce Report reads as follows:

"Fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange. Managements of properties owned by the investing public should not be permitted to perpetuate themselves by misuse of corporate proxies. Insiders having little or no substantial interests in the property they manage have often retained their control without any adequate disclosure of their interest and without an adequate explanation of the management policies they intend to pursue. Insiders have at times solicited proxies without fairly informing the stockholders of the purposes for which the proxies are to be used and have used such proxies to take from the stockholders for their own selfish advantage valuable property rights. Inasmuch as only the exchanges make it possible for securities to be widely distributed among the investing public, it follows as a corollary that the use of the exchanges should involve a corresponding duty of according to shareholders fair suffrage. For this reason the proposed bill gives the Federal Trade Commission [later changed to the S.E.C.] power to control the conditions under which proxies may be solicited with a view to preventing the recurrence of abuses which have frustrated the free exercise of the voting rights of the stockholders." H.Rep.No.1383, 73 Cong., 2 Sess., 1934, pp. 13–14.

Control of the solicitation of proxies was one of the four major methods by which the protection of the investor was to be achieved. (Others were requirement of registration of most securities, requirement of periodic reports, control of insider trading practices). Loss, Securities Regulation (1951) p. 469 et seq.; Comment, Civil Liability for Misstatements in Documents Filed Under Security Act and Securities Exchange Act, 44 Yale L.Journal 456.

5. Section 32(a), 15 U.S.C.A. § 78ff(a).

6. Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691, 694; Texas & P. R. Co. v. Rigsby, 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874; Restatement of Torts, Section 286; Prosser, Torts, Section 39; Thayer, Public Wrongs and Private Actions, 27 Harvard L.Rev. 317, Notes, 48 Columbia L.Rev. 456, and 1090.

7. Baird v. Franklin, 2 Cir., 141 F.2d 238.

8. Remar v. Clayton Securities Corp., D.C. Mass., 81 F.Supp. 1014; Appel v. Levine, D.C.S.D.N.Y., 85 F.Supp. 240.

who are both brokers and dealers;[9] for violations of Section 15(c), 15 U.S.C.A. § 78o(c), which prohibits fraudulent practices by brokers and dealers;[10] and most notably for violations of Rule X–10B–5, 17 C.F.R. 240.10b–5, Section 10(b), 15 U.S.C.A. § 78j(b) and related sections of the Securities Act of 1933 and the rules promulgated thereunder which make unlawful the employment of manipulative and deceptive devices in connection with the purchase or sale of a security.[11] The fact that three sections of the Act expressly provide for civil liability [12] has been held not to exclude by implication civil liability based upon acts made unlawful by other sections.[13]

In Subin v. Goldsmith, 2 Cir., 224 F. 2d 753, 756, certiorari denied 350 U.S. 883, 76 S.Ct. 136, Judge Frank, in his dissent, concluded that a private right of action was created which could be sued on derivatively for the benefit of the corporation. Although the majority expressed doubt that Section 14 created any private substantive right, it did not pass on this question. 224 F.2d 774. The question of whether the action should be derivative or representative was not sharply presented or discussed.

Diversity of citizenship was present. The majority had held that the allegations of the claim under the statute were insufficient even if the statute would support a private action of any kind. The complaint was so artfully drawn that it was not clear to the majority whether it alleged a derivative action or not. Judge Medina, speaking for the majority, said, at page 774:

"The amended complaint, for reasons which are far from clear, is divided into five Counts, the last four of which repeat and reallege in a bewildering manner certain selected paragraphs and groups of paragraphs of the first and other Counts. It is not even clear whether all, or only a few, or perhaps one, of the Counts are derivative. * * *"

It is my view that the right of action created by the statute and regulations is that of the individual stockholder not the corporation. The right given by the statute and regulations was an implementation of the shareholder's right to vote and in this case his right to consent or withhold consent to a particular transaction. These are rights of the individual stockholder not those of the corpora-

---

9. Hawkins v. Merrill, Lynch, Pierce, Fenner & Beane, D.C.W.D.Ark., 85 F.Supp. 104, 121–124.

10. Coburn v. Warner, D.C.S.D.N.Y., 110 F.Supp. 850, 851.

11. Kardon v. National Gypsum Co., D.C. E.D.Pa., 69 F.Supp. 512; Stella v. Kaiser, D.C.S.D.N.Y., 82 F.Supp. 301, 310–313; Osborne v. Mallory, D.C.S.D.N.Y., 86 F.Supp. 869, 878–879; Speed v. Transamerica Corp., D.C.Del., 99 F. Supp. 808, 828–832, 849–850; Fischman v. Raytheon Mfg. Co., 2 Cir., 188 F.2d 783, 787; Fratt v. Robinson, 9 Cir., 203 F.2d 627, 631–633, 37 A.L.R.2d 636; Cf. Birnbaum v. Newport Steel Corp., 2 Cir., 193 F.2d 461, certiorari denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356; Slavin v. Germantown Fire Ins. Co., 3 Cir., 174 F.2d 799, 806; Note, New Civil Liabilities Under Securities and Exchange Act Rules, 14 University of Chicago L.Rev. 471.

12. The three sections expressly providing for civil liability are Section 9(e), 15 U.S.C.A. § 78i(e), 16(b), 15 U.S.C.A. § 78p(b) and Section 18(a), 15 U.S.C.A. § 78r(a).

13. Kardon v. National Gypsum Co., D.C. E.D.Pa., 69 F.Supp. 512, 514; Baird v. Franklin, 2 Cir., 141 F.2d 238, 245, certiorari denied 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591; Fratt v. Robinson, 9 Cir., 203 F.2d 627, 632, 37 A.L.R.2d 636.
 See also Geismar v. Bond & Goodwin, D.C.S.D.N.Y., 40 F.Supp. 876; Goldstein v. Groesbeck, 2 Cir., 142 F.2d 422, 154 A.L.R. 1285, certiorari denied 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590, which found this argument not persuasive and sustained private civil actions under Section 29(b) and its analogue Section 26 of the Public Utilities Holding Company Act, 15 U.S.C.A. § 79z, which provide that contracts made in violation of the statute are void.

tion.[14] The class intended to be protected was the investor, the stockholder who was not associated with management. He was to be protected against misleading proxy solicitation from any source, even by persons hostile to management.[15] It was the individual investor who was without effective recourse prior to the enactment of the statute. There is no suggestion that Congress found the rights of the corporation, as already protected by derivative action, inadequately provided for. In fact, provision in this very section, expressly authorizing regulations for the protection of the issuer as well as the investor was stricken prior to the passage of the Act.[16] Congress' failure to include the corporation is all the more understandable because the newly created right of action, being based on fault,[17] would not have liberalized in any substantial degree the right of recovery the corporation already had against its directors. Further, to have given a right of action to the corporation would have permitted the corporation to proceed against the distributor of anti-management proxy statements and thus have added to the hazards of members of the very class the statute was designed to protect.[17a] Previous cases which have sustained derivative actions under other provisions of the Securities and Exchange Act are readily distinguishable.[18]

Plaintiff has asked leave to amend to allege the claim as a representative action on behalf of all stockholders similarly situated. Although this court would have jurisdiction of such a claim, this application must be denied because

14. Schreiber v. Butte Cooper & Zinc Co., D.C.S.D.N.Y.1951, 98 F.Supp. 106, 114; Westerlund v. Black Bear Mining Co., 8 Cir., 1913, 203 F. 599, 615; See Royal Indemnity Co. v. American Bond & Mortgage Co., 1933, 289 U.S. 165, 171, 53 S.Ct. 551, 77 L.Ed. 1100; Lord v. Equitable Life Assurance Society, 194 N.Y. 212, 228–229, 87 N.E. 443, 22 L.R.A.,N.S., 420; Stokes v. Continental Trust Co., 186 N.Y. 285, 296, 78 N.E. 1090, 12 L.R.A.,N.S., 969; Fletcher, Cyclopedia Corporations (1952 Rev.) § 2025.

15. See S.E.C. v. Okin, 2 Cir., 132 F.2d 784.

16. Cf. H.R. 9323 Union Calendar No. 302, April 25, 1934.

17. The right of action given under the statute is one based upon willful misconduct. The individual stockholder may take advantage of the same conduct which is made criminal by the statute. Section 32(d), 15 U.S.C.A. § 78ff(a) requires that the violation be willful. For statement regarding similar language of Rule X–10B see Loss, op. cit. (1955 Supp.) p. 370.

The basis for private suit is quite different from that which supplies a basis for action by the S.E.C. By Section 21 (e), 15 U.S.C.A. § 78u(e), the S.E.C. is authorized to obtain an injunction when it appears that any person is engaged or about to engage in any act which constitutes a violation of the statute. It is not required to prove willfulness but merely that the resulting act will violate the statute. Hecht Co. v. Bowles, 321 U.S. 321, 331, 64 S.Ct. 587, 88 L.Ed. 754; S.E.C. v. Okin, 2 Cir., 132 F.2d 784, 787; Otis & Co. v. S.E.C., 6 Cir., 106 F.2d 579, 580, 583; S.E.C. v. O'Hara Re-Election (or Proxy), Committee, D.C. D.Mass., 28 F.Supp. 523. It is not necessary to sustain S.E.C. action that there be proof of irreparable injury or absence of adequate remedy at law. S.E.C. v. Jones, 2 Cir., 85 F.2d 17, certiorari denied 299 U.S. 581, 57 S.Ct. 46, 81 L.Ed. 428; S.E.C. v. Torr, 2 Cir., 87 F.2d 446, 450.

17a. See S.E.C. v. Okin, supra.

18. Stella v. Kaiser, D.C.S.D.N.Y., 82 F. Supp. 301, 310–313 was a derivative action on behalf of a corporate purchaser of securities. Birnbaum v. Newport Steel Corp., 2 Cir., 193 F.2d 461, certiorari denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356, was a derivative action under Rule X–10B–5 based upon misrepresentations by directors. It was dismissed because the corporation, itself, was not a purchaser or seller of securities. Goldstein v. Groesbeck, 2 Cir., 142 F.2d 422, certiorari denied 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590, sustained a derivative action but with respect to an altogether different type of statutory provision (Public Utility Holding Company Act, Section 26), which provided that certain contracts executed in violation of the act were void. Obviously it was the corporation, as party to the contract, which had the right to rescind.

the present allegations of the complaint no longer state a claim for which relief may be granted to an individual stockholder. The federal right which the statute gives the stockholder is one which must not be confused with the rights given by state law to which it may be incidental. It is an implementation of his suffrage. It gives him a new tactical weapon for use in the campaign leading up to the crucial stockholders' meeting. If the management or any other stockholder circulates false or misleading proxy statements, a stockholder may compel the corporation to assist in the distribution of a corrective statement[19] and he may call upon this court to help him. If correction cannot be made in time, the court has undoubted power, in a proper case, to enjoin the holding of the stockholders' meeting until it can be made. This relief, which might have been available had there been timely application for a temporary injunction, has been lost by the laches of the plaintiff. The damages the stockholder incurs in compelling rectification of a misleading statement would seem to be recoverable from the person who violated the federal statute, but in the absence of such an expense the intrusion of misleading statements into the process of stockholder suffrage is impossible to measure in money damages.

Here the only injury alleged is the sale but there is no basis in the complaint for concluding that the sale was a violation of the federal statute.[20] There is no basis in the statute or its legislative history for an implication that Congress intended to give an individual stockholder, as an incident of his protection by proxy statement regulations, the right to rescind completed corporate transactions whenever based upon votes solicited by such statements, or the right to enforce the corporation's claim for waste.[21] The drastic nature of such relief and the ease with which it could have been expressly authorized if Congress had so intended all argue against such implication.[22]

Even assuming that, under Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 and Fielding v. Allen, 2 Cir., 181 F.2d 163, certiorari denied, Ogden Corp. v. Fielding, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600, plaintiff might recover under the federal statute for the loss of his opportunity to vote[23] or to withhold consent to the sale, he did not lose these

19. Rule X–14A–8, 17 C.F.R. 240a–8 provides that if a solicitation of proxies is made by the corporate management, the issuer must, at the request of a shareholder and at his expense, mail copies of the shareholder's proxy statement to its security holders, or, alternatively, furnish the shareholder with a list of the security holders solicited by management.

20. Subin v. Goldsmith, supra, 224 F.2d at page 762.

21. Waste is, of course, a claim of the corporation not the stockholder. Niles v. New York Central & H. R. R. Co., 176 N.Y. 119, 122–126, 68 N.E. 142; Kavanaugh v. Commonwealth Trust Co., 181 N.Y. 121, 123–124, 73 N.E. 562; Green v. Victor Talking Machine Co., 2 Cir., 24 F.2d 378, 380, 59 A.L.R. 1091. So also is right to rescission. See Continental Ins. Co. v. New York & H. R. Co., 103 App.Div. 282, 93 N.Y.S. 27, 40. See as to both Fletcher Cyclopedia Corp. (1943 Rev.) §§ 5924, 5927; N.Y.Gen. Corp.L. §§ 60, 61. This case must be distinguished from one in which a stockholder seeks only to protect himself from the dilution of his stock control. Cf. Horwitz v. Balaban, D.C.S.D.N.Y., 112 F.Supp. 99.

22. It is not necessary to consider at this time the right to set aside the election of directors or to review other matters entirely within the internal affairs of the corporation. Cf. Textron, Inc., v. American Woolen Co., D.C.Mass., 122 F.Supp. 305, 308–309; Phillips v. United Corp., D.C.S.D.N.Y., C.C.H.Fed.Sec.L.Rep. Par. 93095, pp. 91066, 91070–71, 91073. Also to be distinguished is Horwitz v. Balaban, D.C.S.D.N.Y., 112 F.Supp. 99, 102, in which jurisdiction was based on diversity of citizenship and violation of proxy regulations was merely evidentiary support for a claim that stockholder approval had actually not been obtained.

23. Damages may be recovered for deprivation of the right to vote. Nixon v. Herndon, 273 U.S. 536, 539–540, 47 S. Ct. 446, 71 L.Ed. 759; Goetcheus v.

rights. He was not misled himself by the proxy statement. On the contrary, he started this action before he voted. He can only rely upon some claim that the proxy statement so corrupted the notice of the shareholders' meeting that there was non-compliance with the New York law, in effect no submission of the question to the stockholders, including himself. This, however, would present a claim for violation of state rather than federal law. The claim would turn upon the interpretation of the state law not the federal. The questions of fact and law would be the same even though the federal statute had never been enacted. Under such circumstances the claim would not arise under the laws of the United States. See Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Nelson v. Leighton, D.C. N.D.N.Y., 82 F.Supp. 661, 664; Miller v. Long, 4 Cir., 152 F.2d 196.

Accordingly, the complaint is dismissed.

Mathewson, 61 N.Y. 420, 424–425. Also for fraud in procurement of stockholder's consent. Vogt v. Vogt, 119 App.Div. 518, 104 N.Y.S. 164. This protection should extend to a stockholder who was misled into giving up his right as an objecting stockholder to demand valuation and payment of his stock pursuant to N. Y. Stock Corp.L. §§ 20, 21.